## THE STATE OF TEXAS v. GUSTAVE COOK.

#### (Case No. 4523.)

1. CONSTRUCTION OF STATUTES.— Section 6 of the act "To organize and define the powers of the criminal district court in and for the counties of Galveston and Harris, and to prescribe the duties thereof " (2 Pasch. Dig., art. 6140), is as follows: " There shall be appointed by the governor, . . . a judge for said court, who shall hold his office for four years, . . . and shall receive the same salary as judges of the district courts." In the constitution of 1876 this court was retained (art. V, sec. 1), with the district jurisdiction and organization now existing by law, until otherwise provided by law." By the constitution the salary of the district judges was fixed at $2,500 a year, no legislation existing otherwise fixing the salary of the judge of said criminal district court. *Held,*

(1) It was the intent that the salary of the criminal district judge conform to and be dependent upon the salary of the judges of the district court.

(2) An appropriation law does not alter a salary fixed by statute.

2. SERVICE OF CITATION UPON THE STATE.— Where suit is allowed by legislative act against the state, and no mode of service is prescribed, service upon the governor or on the attorney general is sufficient.

APPEAL from Travis. Tried below before the Hon. A. S. Walker.

The brief for appellee and the opinion of the court contain a full statement of the case.

*J. H. McLeary,* Attorney General, for appellant, cited Thompson *v.* Bishop, 24 Tex., 303; Kilgore *v.* Magee, 85 Penn., 401; State *v.* Gales, 77 N. C., 283; State *v.* Von Baumbach, 12 Wis., 310; People *v.* Morrell, 21 Wend., 563; State *v.* Douglas, 26 Wis., 428; People *v.* Board of Police, 19 N. Y. (S. C.), 653; U. S. *v.* Ashfield, 1 Otto, 317; State *v.* Weston, 6 Neb., 16; Dash *v.* Van Kleeck, 7 Johns., 497; Columbus Mfg. Co. *v.* Vanderpool, 4 Cow., 556; Livingston *v.* Harris, 11 Wend., 329; Const., art. 3, sec. 44; art. 4, sec. 23; art. 5, secs. 2, 5 and 7; R. S., 1215, 1282, 1487; Gen. Laws 1870, ch. 26.

*Hancock & West,* for appellee.

I. The office of judge of the criminal district court of Galveston and Harris counties, held by appellee, being an office created by or recognized in the constitution of the state, and the salary fixed in accordance with law, the legislature had no power during the continuance of appellee's term of office to increase or diminish his salary, and even if they had that power, the mere fact that on more than one occasion they failed to appropriate a sufficient amount to pay appellee the whole of his salary for each year as fixed by law, would not be considered as an exercise of that power; nor does the fact that appellee drew and receipted for so much of his salary as there

was an appropriation for, estop him from claiming the balance that may be due him under the law fixing his salary, especially when the legislature has by its own act authorized him to sue the state for such unpaid balance as may be due him, if any. Appellee was appointed to the office in question on the 3d of August, 1874, for the term of four years from date, that being at that date the period for which said office was held. Afterwards, by the operation of the constitution of 1876, the term of office was changed from four to two years, and appellee was reappointed on 3d of August, 1878, for a period of two years — that is, to August 3, 1880. The salary was fixed by law in 1870 at $3,500 per annum, and at that rate appellee was paid from 1874 up to the 31st of December, 1878, regular appropriations being made for that purpose. After the last named date, that is, from the 31st day of December to the 1st day of September, 1880, the state authorities failed to pay him at that rate, but paid him at a different rate. He was reappointed on the 1st of September, 1880, and the salary having been on the 1st of September, 1879, fixed at $2,500, since his last appointment in September, 1880, he has been drawing pay at that rate. The amount now claimed is the difference between what the state paid appellee from the 31st December, 1878, to 1st September, 1880, and what he contends he was entitled to under the law; that amount, it being agreed, is the sum for which the judgment is rendered, $1,583.33, if for any. Const. of 1870, art. 5, sec. 1, p. 3, and sec. 13; Pasch. Dig., vol. 2, p. 1247, note 1289, and arts. 6135–6140, note 1292; Const. of 1876, art. 5, secs. 1 and 7, and also art. 16, sec. 30; Gen. Laws of 1876, act of 21st of August, 1876, p. 251; R. S., pp. 642, 643, arts. 4471, 4481; Laws of 1879, pp. 19, 158; Act of April 4, 1881; Gen. Laws of 17th Leg., p. 98.

II. There is nothing in the record showing how or when the service was made, or showing that it was made at all, and as the state appeared by the attorney general, it must be presumed that if there was any irregularity in the service it was waived; if, however, it be the fact that the chief executive of the state was served, then that was good service on the state; if not, how is the state to be served when she authorizes suit to be brought against her? The original petition prayed for a citation to issue against the state of Texas, and to be served on O. M. Roberts, governor of the state. The state appeared by the attorney general, and moved to quash the service, and pleaded to the jurisdiction. The motion to quash was refused, but the citation is not in the record, nor was any bill of exceptions taken, by which the facts before the court might be

known. Phillips' Practice (U. S. Sup. Ct.), revised of 1878, ch. 2, pp. 19, 20; Grayson v. State, 3 Dall., 320; Chisholm v. Georgia, 2 Dall., 419; argument of Mr. Randolph, the attorney general.

GOULD, CHIEF JUSTICE.— Under authority of an act authorizing him to institute suit against the state, to ascertain "what amount, if any, is due" him "by the state, for salary as judge of the criminal district court of Galveston and Harris counties, between the 1st day of January, 1879, and the 1st day of September, 1880," this suit was brought by Gustave Cook, claiming that, during that period, he was entitled to a salary at the rate of $3,500 per annum. It appears that up to January, 1879, the appropriation acts provided for the payment of the salary of that official at the rate claimed by him. For the months of January and February, 1879, the appropriation was $500 — or at the rate of $3,000 per annum. Acts of 1879, p. 19. Thereafter the appropriation was only at the rate of $2,500 per annum. Having received only the amount appropriated, this suit was brought to recover the balance claimed to be due. In accordance with the ruling just made in the case of The State v. Steele, if the salary of the judge of the criminal district court of Galveston and Harris counties was fixed by law at the rate of $3,500 per annum, the right of that judge to his full salary was not defeated by the fact that the legislature made appropriations insufficient in amount for its payment.

Referring to the act of July 23, 1870, "To organize and define the powers of the criminal district court in and for the counties of Galveston and Harris, and to prescribe the duties thereof," we find it provided that "there shall be appointed by the governor, by and with the advice and consent of the senate, a judge of said court, who shall hold his office for four years, and until his successor is duly qualified, and shall receive the same salary as judges of the district courts." 2 Pasch. Dig., arts. 6135, 6140. At that time judges of the district court were entitled to a salary of $3,500, and it seems to be claimed that the effect of this statute is the same as if its language had been, "the judge of the criminal district court shall receive a salary of $3,500 annually." In our opinion both the letter and the spirit of the statute require a different construction, the legislative intention, as expressed directly and as implied from the context, being to place this criminal district court, and its officers, as far as practicable, on terms of equality with other district courts and their officers, and to make the salary of the judge conform to, and dependent upon, the salary of "judges of the district courts." The same act

created the office of district attorney for that court, and prescribed that " the duties of the said attorney shall be the same in said court as other district attorneys in the district courts, and he shall receive the same salary." 2 Pasch. Dig., art. 6141. It is significant of the legislative construction of the last clause of this article, that on the subsequent reduction of the salary of district attorneys from $1,200 to $500, the appropriations for the salary of the criminal ditsrict attorney were at once reduced to the latter named sum.

So the act provided of this district attorney, and of the clerk of said court, that their fees " shall be the same as allowed by law to clerks and attorneys of the district courts." It would scarcely be claimed that the fees of these officers were fixed so as to remain unchanged, notwithstanding subsequent changes of the fees allowed clerks and district attorneys of the district courts.

In pursuance of the same prevailing purpose of placing the criminal district court on terms of equality with the district courts, it was enacted in 1871 that: " It shall be lawful for the judge of said criminal district court to exchange or alternate with any district judge . . . in all criminal matters." 2 Pasch. Dig., art. 6149.

During the period from January 1, 1879, to September 1, 1880, Judge Cook was acting under an appointment made in August, 1878, and at the date of that appointment, and throughout that period, the salary of a district judge was $2,500. No question arises in regard to the power to reduce his salary during his term of office. In our opinion the salary to which he was entitled after his reappointment was " the same as the salary of the judges of the district courts," viz., $2,500.

The point was made below, and is presented here, that the act authorizing the suit made no provision for service, and that in the absence of some such provision, service on the governor of the state was insufficient. We entertain no doubt that the court was authorized to treat this as good service. No statutory mode having been provided for bringing the state into court, it was competent for the court to recognize service on the chief executive officer of the state, or the attorney general, the legal representative of the state, as sufficient. Wheeler v. State, 8 Tex., 230. See also authorities cited in brief of counsel for appellee.

The judgment is reversed, and judgment will be here rendered in favor of the state.

REVERSED AND RENDERED.

[Opinion delivered June 2, 1882.]