[No. 1253.]

THE STATE OF NEVADA ex rel. O. H. GALLUP, RELATOR, *v.* J. F. HALLOCK, STATE CONTROLLER, RESPONDENT.

MANDAMUS—STATE OFFICERS—SALARY—APPROPRIATION FOR TWO OFFICES IN SOLIDO.—Where a sum has been appropriated by the state legislature providing for the payment to the lieutenant-governor of a salary *in solido* as *ex officio* adjutant-general and *ex officio* state librarian, and another is appointed, the state controller is justified in refusing to audit a compensation allowed such substituted official by the board of examiners, as the appropriation has become inoperative.

APPLICATION for *mandamus*.

*R. M. Clarke*, for Relator:

*H. F. Bartine*, for Respondent:

By the Court, BELKNAP, C. J.:

A vacancy arose in the office of state librarian during the month of September, 1885, by reason of the failure of the lieutenant-governor to maintain his official bond. (*State ex rel. Attorney General* v. *Laughton, ante*, 202.) The relator was

appointed to the vacancy, and has ever since acted as state librarian. The state board of examiners have allowed him, as compensation for his services, the sum of one hundred and fifty dollars per month, aggregating the sum of two thousand two hundred and fifty dollars. Respondent, the state controller, refuses to audit and allow the claim, or draw his warrant therefor. Relator seeks; by this proceeding in *mandamus*, to compel the controller to do so.

Under the provisions of an act of the legislature, approved February 24, 1866, entitled "An act defining the duties of the state controller" (section 1811, Gen. Stat.), it is made the duty of this officer to audit all claims against the state for the payment of which an appropriation has been made, but of which the amount has not been definitely fixed by law, and which have been examined and passed upon by the board of examiners.

The question to be determined is whether an appropriation has been made for the payment of this claim. If it has, the controller should audit the claim. If not, he rightly refused to act. The fund sought to be subjected to the payment of the claim was created by the general appropriation bill of March 7, 1885. (Stat. 1885, 70.) By this law the legislature made specific appropriations of money for the support of various public institutions, the payment of salaries of officers, and such other matters as are usually embraced in laws of this character. The first section of the act appropriates the various sums of money thereinafter named for the purposes particularly expressed. Section four of the act reads as follows:—

"Sec. 4. For salary of lieutenant-governor, as *ex officio* adjutant-general and *ex officio* state librarian, five thousand four hundred dollars."

At the time this appropriation was made, the law of February 17, 1883, ·defining the *ex officio* duties of the lieutenant-governor, was, and has ever since been, in force. This law is as follows:—

"Sec. 1. The lieutenant-governor shall be *ex officio* adjutant-general of the state and *ex officio* librarian, and for the services he shall render as such, and while acting as governor in the absence of the governor from the state, he shall receive an annual salary of two thousand seven hundred dollars, to be paid at the same time and in the same manner as other state officers are paid, and no extra clerical labor shall be employed

at the state's expense in said library, save and except while he is otherwise employed on other official duties." (Sec. 1777, Gen. Stat.)

It is contended in behalf of relator that the compensation of the lieutenant-governor is fixed by the law of 1881 (Stat. 1881, 44), and that it was not within the power of the legislature, as contemplated by the act of 1883, to make any change in the compensation of the lieutenant-governor to take effect during Mr. Laughton's term of office. Such change, it is claimed, is in violation of article 15, section 9, of the constitution, which provides: "The legislature may at any time provide by law for increasing or diminishing the salary or compensation of any of the officers whose salary or compensation is fixed in the constitution, provided no such change of salary or compensation shall apply to any officer during the term for which he may have been elected."

In *Crosman* v. *Nightingill,* 1 Nev. 323, it was held that the compensation of the lieutenant-governor as such was not fixed in the constitution, but only a *per diem* for services actually rendered as president of the senate. This decision sustains the act of 1883 in changing the compensation of the lieutenant-governor, to take effect during the term of the incumbent. The money appropriated by the act of 1885 was intended for the payment of the compensation of the lieutenant-governor for the two years then succeeding, as fixed by the law of 1883, in consideration of the performance of the duties enjoined upon him by law. This intention is shown by a consideration of the statute of 1883, in connection with the language of the statute of 1885, declaring the purpose of the appropriation to be the payment of the lieutenant-governor for services as *ex officio* state librarian and *ex officio* adjutant-general, and the sum appropriated was set apart *in solido* for the payment of all of the services to be rendered by this officer. Conditions have arisen which prevent the employment of the fund in this manner, and the appropriation has become inoperative. But the legislature itself would have segregated the fund had segregation been contemplated.

We conclude that no portion of the appropriation can be employed in payment of relator's claim.

Writ denied.

LEONARD, J.:

I concur in the judgment.

Hawley, J., concurring:

It is the duty of respondent, as state controller, "to audit all claims against the state for the payment of which an appropriation has been made, but of which the amount has not been definitely fixed by law, and which shall have been examined and passed upon by the board of examiners," and he shall allow, of such claims, "such an amount as he shall decree just and legal, not exceeding the amount allowed by said board," and draw warrants on the treasurer for such amounts as shall be allowed. (Gen. Stat. 1811.) The statute also provides that "no warrant shall be drawn on the treasury, except there be an unexhausted specific appropriation by law to meet the same." (Gen. Stat. 1812.)

The claim presented by relator is not of that class, within the contemplation of the framers of the constitution, to be "considered and acted upon by the board of examiners." (Art. 5, sec. 21.) The legislature did not intend that this claim should, in any event, be passed upon by the board of examiners and audited by the state controller. It should not be treated the same as claims coming within the appropriations for the support of different state institutions, and other cases, where the value of the services rendered, and of the supplies furnished, cannot, from the very nature of the claims, be ascertained in advance, and for the payment of which a gross sum is always appropriated. It belongs to an entirely different class, to wit: the salary and compensation of public officers, the amount of which is definitely fixed either under the provisions of the constitution or by the statute.

The appropriation of five thousand four hundred dollars was intended as compensation for the services to be rendered by the state librarian and adjutant-general. The legislature, supposing that the lieutenant-governor would comply with the laws then in force, and perform the duties of these offices, appropriated a definite and fixed amount as compensation for the services to be rendered therein. It is true that the appropriation, as made by the legislature, includes compensation for the services performed by relator as state librarian; but it also includes compensation for the services of the lieutenant-governor as ex officio adjutant-general, which is a separate and distinct office. The amount appropriated cannot be segregated,

as the statute does not declare what portion of the amount was intended as compensation for the services of the state librarian, or what portion was intended for the services of the adjutant-general. The fact that these offices are held by different persons—a condition of affairs not contemplated by the legislature when the appropriation was made—makes it apparent, as stated in the opinion of the chief justice, that this appropriation has become inoperative, and cannot be used as compensation for the services rendered in either office.

In *Kinsey* v. *Kellogg* the court said: "When the act of 1876 was passed, there was a person who was discharging the duties of clerk, recorder, and auditor, and, unless subsequent legislation should require otherwise, one person would continue to fill the three separate offices. It was to this condition of things that the law was made applicable; and the compensation provided by it was provided as compensation to the clerk, the recorder, and the auditor. The law did not determine how much should be paid to each of the three officers—a matter of no consequence so long as the three offices were in one man. But when the organization of the county government was changed, and the person who was clerk was not auditor nor recorder, it is clear that no one of the three officers was entitled to receive the compensation intended for the three; and, as the act of 1876 did not provide for the event, the act, by force of its own expressions, became inoperative when the event occurred." (65 Cal. 115.)

In the case at bar there is a general appropriation for the entire services to be rendered in two separate and distinct offices; but there is no specific appropriation of any sum of money for the payment of the particular claim and demand of relator as state librarian; and, as there is no " unexhausted *specific* appropriation by law to meet the same," it was the duty of the state controller to refuse to draw any warrant therefor. Owing to the existing condition of affairs, it will devolve upon the legislature to determine, in accordance with the justice of the case, the amounts which the relator and the lieutenant-governor are respectively entitled to receive.

For the reasons stated, I concur in the conclusion that the writ of *mandamus* should be denied.