[No. 1458.]

THE STATE OF NEVADA, EX REL. H. C. CUTTING, SUPERINTENDENT OF PUBLIC INSTRUCTION, RELATOR, *v.* C. A. LAGRAVE, STATE CONTROLLER, RESPONDENT.

SUPERINTENDENT OF PUBLIC INSTRUCTION—SALARY OF, FOR EX OFFICIO OFFICES—ACT FIXING SALARY FOR SEVERAL OFFICES IN SOLIDO, INOPERATIVE WHEN PART OF OFFICES ARE TAKEN AWAY.—Statutes of 1891, p. 104, provide that the superintendent of public instruction shall receive a certain compensation as *ex officio* clerk of the supreme court, *ex officio* state librarian, *ex officio* curator of the state museum, and secretary of the board of directors of the orphans' home, in addition to his salary as superintendent. By Stats. 1893, p. 32, the act making the superintendent *ex officio* librarian and clerk was repealed, and these positions were attached to the office of secretary of state, but nothing was said in regard to the superintendent's salary as curator and secretary. *Held,* that the superintendent was not entitled to receive any of the compensation attaching *in solido* to the four *ex officio* offices.

IDEM—EFFECT OF APPROPRIATION BY LEGISLATURE OF SUPPOSED SALARY.—That the legislature, in making the appropriation for the salary of the superintendent for 1895 and 1896, appropriated a sum equal to his salary as superintendent and that attached to his former *ex officio* offices, is immaterial. (BONNIFIELD, J., concurring upon the ground that the general appropriation bill of 1895, in so far as it appropriates more than $1,000 annually out of the school fund, never became operative.) ·

ORIGINAL PROCEEDING. Application by the State, on the relation of H. C. Cutting, as Superintendent of Public Instruction and *ex officio* Curator of the State Museum, against C. A. LaGrave, State Controller, for a writ of *mandamus.* Denied.

The facts sufficiently appear in the opinion.

*H. C. Cutting*, in *pro. per.*, for Relator:

I.   What is the salary of the superintendent of public instruction, with his *ex officio* offices, under the present statutes? This is a question of statutory construction. (Sutherland, Statutory Construction, p. 290, sec. 219.) "The intention of an act will prevail over the literal sense of its terms." (*State* v. *Kruttschnitt*, 4 Nev. 178.)

II.   The legislature of 1893 must surely have construed this salary act as attaching a salary of $2,400 to the office of superintendent of public instruction, for when, by the act approved February 20, 1893 (Stats. 1893, 32), they took from the superintendent the *ex officio* duties of clerk of the supreme court and state librarian and gave them to the secretary of state, they said nothing about a change in salary for either officer. If these *ex officio* duties added nothing to the salary of secretary of state, why should they take anything from the superintendent of public instruction? This arrangement of these *ex officio* duties was made two years before either law was to go into effect, and the legislature of 1895 construed this salary act just at the time that it took effect by making the following appropriations in the general appropriation act (Stats. 1895, 69–70): "Sec. 6.   For salary of secretary of state and *ex officio* clerk of the supreme court and *ex officio* state librarian, forty-eight hundred ($4800) dollars." "Sec. 20.   For salary of superintendent of public instruction and *ex officio* curator of the state museum, forty-eight hundred ($4800) dollars."

III.   The contemporary and subsequent action of the legislature in reference to the subject matter has been accepted as controlling evidence of the intention of a particular act. (Sutherland, Statutory Construction, p. 394, sec. 311.)

IV.   As this is a statute prescribing a salary to a public officer it should be liberally construed.   (Sutherland, Statutory Construction, p. 536, sec. 419.)

V.   The legislature had a perfect and legal right to appropriate $2,400 per annum for the salary of superintendent of public instruction and *ex officio* curator of the state museum, and the expression of their will in the appropriation act is law, as it is the last expression of the will of the legislature. (*Riggs* v. *Brewer*, 64 Ala. 282; *Riggs* v. *Pfister*, 21 Ala. 469;

*U. S.* v. *Ashfield,* 91 U. S. 318; *Meyers* v. *English,* 9 Cal. 341; *Sage* v. *Schuyler,* 79 N. Y. 201.)

*Robt. M. Beatty,* Attorney-General, for Respondent:

I.   At present and at all times during the incumbency of relator the superintendent of public instruction is and was, by law, *ex officio* curator, and perhaps secretary of the board of directors of state orphans' home.   As superintendent of public instruction, his salary has been fixed by law at the sum of $1,000 per annum, " payable out of the general school fund."   (Stats. 1891, p. 104.)

II.   There is no salary fixed by law for his *ex officio* duties as either curator or secretary of the board of directors of the orphans' home, except that by the act approved March 21, 1891, and that act fixes it only in conjunction with the salary fixed for the other *ex officio* duties of clerk of the supreme court and state librarian, and at that time attached to his principal office, and at that time he was in fact not secretary of said board of directors.   When the present appropriation was made, it was evidently based upon the salary as established for the principal and all four *ex officio* offices of the superintendent of public instruction with, however, but one of them named in the appropriation.   Therefore, the appropriation in excess of $1,000 per year for the principal office is void because the other $1,400 per year is appropriated *in solido,* and no one can ascertain how much of it shall be paid for salary of curator, the appropriation having been made *in solido* and not being specific, the salary having been fixed at $1,400 per annum for four *ex officio* offices, when now but two of them remain to relator, and but one of these is named in the appropriation.   (19 Nev. 372, citing 65 Cal.)

III.   · The superintendent cannot receive any pay for the *ex officio* offices which have been taken from him and nothing by reason of being secretary of the board of directors of the orphans' home, because there is no salary fixed for that office (Stats. 1881, 31), nor is there an appropriation made for it, and the salary of curator, having been abolished by repeal of the act of 1877, there is no salary legally payable for services as curator, and that not being a constitutional

office, the salary thereof is under the control of the legis-
lalature.

IV.   Respondent cannot legally draw his warrant in favor
of relator for more than at the rate of $1,000 per year for
salary as superintendent of public instruction.   That is the
maximum salary allowed to that officer which can be legally
paid out of the general school fund; and any greater appro-
priation from that fund is absolutely void, for the reason
that even the legislature has no authority or power to appro-
priate any part of the school moneys for salary of curator
or for any other purpose than an educational one.

By the Court, BIGELOW, C. J.:

The relator, as state superintendent of public instruction,
applies for a writ of *mandamus* to compel the respondent, as
state controller, to draw a warrant in his favor for the sum
$200, salary due him for the month of November, 1895.   He
contends that he is entitled to a salary of $2,400 per year,
while the respondent contends he is only entitled to $1,000.
This contention constitutes the question to be decided in this
proceeding.

By Stats. 1891, 32, the legislature provided that after Jan-
uary 1, 1895, " the superintendent of public instruction shall
be *ex officio* clerk of the supreme court, *ex officio* state libra-
rian, and *ex officio* curator of the state museum."   At the
same session, in a general act fixing the salaries of state
officials (Stats. 1891, 104), it was provided that after Jan-
uary 1, 1895, there should be paid " to the superintendent of
public instruction one thousand dollars, payable out of the
general school fund; to the superintendent of public instruc-
tion, as *ex officio* clerk of the supreme court, *ex officio* state
librarian, *ex officio* curator of the state museum, and secre-
tary of the board of directors of the state orphans' home,
fourteen hundred dollars."

At the next session (Stats. 1893, 32) the act above referred
to, making the superintendent *ex officio* clerk and *ex officio*
librarian was repealed, and those positions were attached to
the office of secretary of state, but nothing was said concern-
ing the superintendent's salary as *ex officio* curator or *ex officio*

secretary of the orphans' home board, offices conferred upon him by other statutes.

The office of superintendent and the various *ex officio* offices mentioned in these statutes are each a separate and distinct office, and their being vested in the same person does not change their nature in this respect. (*State ex rel. Davenport* v. *Laughton*, 19 Nev. 202; *People* v. *Durick*, 20 Cal. 94; *Kinsey* v. *Kellogg*, 65 Cal. 111.)

It is very clear that the salary of $1,400, which, by the act of 1891, was to be paid to the superintendent, was the salary attached to all four of those *ex officio* offices, and constitutes the compensation for discharging the duties of all of them. It was to be paid *in solido*, and no particular sum was fixed as the salary of any one of them. This, of course, did not matter so long as all the offices were vested in one person, but now that that person is no longer clerk and librarian, it becomes highly important, for he certainly is not now entitled to the salary attached to those positions. The result is that the law fixing the salary has become inoperative. The superintendent is no more entitled to the whole salary, because of the two positions that he still holds, than is the secretary of state, because of the two now vested in him. But that, under the circumstances, no part of the salary can be paid to the secretary, was, in principle, decided in *State ex rel. Gallup* v. *Hallock*, 19 Nev. 371, and the same principle is applicable here. In fact that case is virtually decisive of this.

There an appropriation had been made for the payment of the lieutenant-governor, as such, and as *ex-officio* librarian and adjutant-general, of which he had lost the two latter positions by failing to give an official bond, and they had become vested in another person. The court said: "The sum appropriated was set apart *in solido* for the payment of all the services to be rendered by that officer. Conditions have arisen which prevent the employment of the fund in this manner, and the appropriation has become inoperative." In the case at bar, so far as the present question is concerned, it is the statute fixing the salary that has become inoperative, but the principle is the same.

*Kinsey* v. *Kellogg*, 65 Cal. 111, is a case squarely in support of the conclusion announced here, and to the same effect is

*San Luis Obispo County* v. *Darke*, 76 Cal. 92. In the latter case the court said: "By the act of March 31, 1876, it was provided that the county clerk should receive a certain annual salary as his only compensation in all three capacities as county clerk, county auditor, and county recorder. After 1881, and while a different person was the incumbent of each of the three offices, the county clerk was entitled to receive no portion of the salary fixed by the law of 1876. The law became inoperative because it was intended to be operative only while the three offices were filled by one person."

The statute of 1891 fixing the relator's salary having become inoperative, so far as the *ex officio* offices are concerned, there is no statute fixing any salary for the offices of curator and secretary of the orphans' home board, and without statutory authority for its payment, no compensation can be recovered by a public officer. (Mecham Pub. Off., sec. 856.)

In the appropriation act of 1895 (Stats. 1895, 70) the legislature appropriated the sum of $4,800 from the general school fund for the payment of the relator's salary as superintendent and *ex officio* curator of the state museum for the fiscal years of 1895 and 1896, and the relator argues that this indicates the intention of that body that he should be paid a salary of $2,400 per year. It probably does indicate that the legislature of 1895 supposed his salary to be that amount, but if so, it was a misapprehension, and it does not follow from the appropriation that the law becomes what they then supposed it was. (Sutherland, Stat. Const., sec. 402; *Van Norman* v. *Jackson*, 45 Mich. 204; *Davis* v. *Delpit*, 25 Miss. 445; *Byrd* v. *State*, 57 Miss. 243.) In the latter case the court said (p. 247): "An enactment of the legislature based on an evident misconception of what the law is will not have the effect, *per se*, of changing the law so as to make it accord with the misconception."

The purpose of the general appropriation act is to provide funds for carrying on the state government. The mere fact that money is appropriated for an officer's salary, or for any other purpose, does not, of itself, make that money payable to any particular person. There must still be some authority of law to justify the controller in drawing a warrant for it,

or the treasurer in paying it out.    (Gen. Stats. 1811.)    If more is appropriated than is sufficient for the particular purpose designated, it is to be covered back into the general fund at the end of the fiscal years.    (*State ex rel. Wilkins* v. *Hallock*, 20 Nev. 73.)    If less, it does not repeal a former act fixing an officer's salary, unless such clearly appears to have been the intention.    (Mecham, Pub. Off., sec. 857; *State* v. *Steele*, 57 Tex. 200; *State* v. *Cook*, 57 Tex. 205.)

It may be, and very likely is, that both the legislatures of 1893 and of 1895 supposed the superintendent's salary was fixed at $2,400 per year, and that they intended him to have that salary, but, if such is the case, they did not manifest that intention in such a manner that it has become law, and consequently it cannot be taken notice of by officers or courts.

Application for the writ denied.

BELKNAP, J.:    I concur.

BONNIFIELD, J., concurring:

I concur in the above opinion that the writ prayed for in this case must be denied, not on the ground that the fourteen-hundred-dollar provision of the salary act of 1891, relating to the salary of the superintendent of public instruction, has become inoperative, for I do not consider that it has become so, but upon the ground, in my opinion, that the general appropriation bill of 1895, in so far as it appropriates more than $1,000 annually out of the school fund towards the payment of the superintendent's salary, never became operative. That part of the appropriation properly made out of the school fund having been exhausted, and no appropriation having been made out of the general state fund for the payment of the balance of his salary, he is subjected to the necessity of awaiting the proper action of the legislature for the balance of his salary.    Although this is unfortunate and to be regretted, it is true and unavoidable.