[No. 1491.]

STATE OF NEVADA, EX REL. EUGENE HOWELL, PETITIONER, *v.* C. A. LaGRAVE, CONTROLLER, RESPONDENT.

STATUTORY CONSTRUCTION—LAWS UPHELD IF POSSIBLE.—Courts are bound to uphold the prior law, if it and a subsequent one may subsist together, or if it be possible to reconcile the two together, and unless the latter statute is manifestly inconsistent with and repugnant to the former, both remain in force.

IDEM—GENERAL STATUTE—NEGATIVE WORDS—REPEAL BY IMPLICATION.— The repeal of statutes by implication is not favored. A general statute without negative words will not repeal the particular provisions of a former law, unless the two acts are irreconcilably inconsistent.

IDEM—REPEAL—CLERK OF SUPREME COURT—COMPENSATION.—Sections 2 and 5 of Stats. 1883, page 78, providing that the clerk of the supreme court shall prepare the decisions of the court for publication, and shall receive for his compensation as reporter of such decisions $600 a year, was not repealed, in so far as it provides compensation for the clerk's services as reporter, by Stats. 1891, page 104, fixing the salary of the secretary of state at $2,400 a year, and Stats. 1893, page 32, providing that the secretary of state shall be *ex officio* clerk of the supreme court.

CONSTITUTIONAL LAW—INCREASE OF SALARY OF STATE OFFICER DURING TERM OF OFFICE—CLERK OF SUPREME COURT.—Petitioner's term of office as secretary of state and *ex officio* clerk of the supreme court began January, 1895, hence the act of 1891 (Stats. 1891, p. 104), fixing the salary of the secretary of state, the act of 1883 (Stats. 1883, p. 78), fixing the compensation allowed the clerk of the supreme court as reporter of decisions, and the act of 1893 (Stats. 1893, p. 32), making the secretary of state *ex officio* clerk of the supreme court, were all passed prior to the term for which he was elected. Therefore, section 9 of article XV of the constitution, which provides that "The legislature may at any time provide by law for increasing or diminishing the salaries or compensation of any of the officers whose salary or compensation is fixed in this constitution; *provided*, no such change of salary or compensation shall apply to any officer during the term for which he may be elected," is not applicable to such state of facts.

SECRETARY OF STATE—CLERK OF SUPREME COURT—REPORTER OF DECISIONS— SEPARATE OFFICES.—The office of secretary of state, of *ex officio* clerk of the supreme court, and the office of reporter of decisions of the supreme court, are separate and distinct offices, and their being vested in the same person does not change their nature in this respect.

IDEM—COMPENSATION AS REPORTER OF DECISIONS—CONSTITUTIONAL LAW.— Petitioner's several offices being distinct, the annual compensation of $600, allowed him as reporter of the supreme court decisions, is not a fee or perquisite, within the provisions of article XVII, section 5, of the constitution, which provides that no state officer "shall receive any fee or perquisite to his own use" for the performance of any duty connected with his office.

ON REHEARING.

CONSTITUTIONAL LAW—CLERK OF SUPREME COURT, CONSTITUTIONAL OFFICE.—
Article IV, section 32, of the state constitution, prior to the amend-
ment of 1889, provided that the legislature should provide for the
election of a clerk of the supreme court and certain county offices.
Provision for the election of such clerk was made by Gen. Stats.
1636. The above-mentioned section of the constitution, as amended
in 1889, requires that the legislature shall provide for the election of
certain county officers, omitting mention of the clerk. Sections 8
and 12 of article XV of the constitution provide that the clerk shall
have his office at the seat of government, and that opinions of the
supreme court must be filed therein before its judgments become
operative: *Held*, that the office of clerk of the supreme court was
not abolished by its omission from the amendment of 1889 and the
failure of the legislature to re-establish it, but continued as a consti-
tutional office under the provision made pursuant to the original
constitution; and hence Stats. 1893, p. 32, providing that the secre-
tary of state shall be *ex officio* clerk of the supreme court, was
effective.

ORIGINAL PROCEEDING. Application for writ of *mandamus*,
on the relation of Eugene Howell, to compel C. A. LaGrave,
State Controller, to draw a warrant in petitioner's favor for
his salary as Reporter of Decisions of the Supreme Court.
Writ issued.

The facts sufficiently appear in the opinion.

*Torreyson & Summerfield*, for Relator:

I. Under the provisions of the act of March 1, 1883, the
clerk of the supreme court, as reporter of decisions, is allowed
a compensation of $600 per year, and such amount is made
payable out of the same fund and in the same manner that
the salaries of the other state officers are paid. In the same
section he is empowered, in his discretion, to employ a com-
petent attorney to assist him, who shall also be allowed a
reasonable compensation for his services, not to exceed $700.
(Gen. Stats. 2560.)

II. In 1891 the salary of the clerk of the supreme court
was fixed at $2,400 annually from and after the 1st day of
January, 1895. (Stats. 1891, p. 104.) By an act approved
twelve days previous to the approval of the last-mentioned
act, the superintendent of public instruction was made *ex
officio* clerk of the supreme court from and after the year
1895. (Stats. 1891, p. 32.) In 1893 an act was passed and

approved making the secretary of state *ex officio* clerk of the supreme court and repealing the act of March 9, 1891. (Stats. 1893, p. 32.)

III.   No act can be found which in terms repeals any part of the general act of March 1, 1883.   If section 5 of the said last-mentioned act is repealed at all, it has been done so only by necessary implication.   But the law looks with particular disfavor upon repeals by implication and will sustain such repeals only when the repugnancy is irreconcilable, plain and unavoidable.   (*State* v. *Horton,* 21 Nev. 304; *Thompson* v. *Supervisors,* 111 Cal. 553; *People* v. *St. Lawrence Co.,* 103 N. Y. 541; *People* v. *Gustin,* 57 Mich. 407; *Robinson* v. *Rippey,* 111 Ind. 112; *Red Rock* v. *Henry,* 106 U. S. 596.)

IV.   A general statute, without negative words, will not repeal the particular provisions of a former one, unless the two acts are irreconcilably inconsistent.

V.   The act of March 1, 1883, is a special act, having in view the subject only of the publication and the distribution of the Nevada Reports and the incidental instrumentalities necessary to accomplish the purposes of the act.   One of the particular instrumentalities is the compensation of the reporter of the decisions and that of a competent attorney to assist him.   The legislature did not have in view the subject of salaries at all, and the word " salaries " is used only once in the entire act, and then only by way of illustration in section 5 of the act.

VI.   Under the terms of the law the clerk of the supreme court receives a salary for his official services as such officer. As reporter of decisions he receives a compensation only. The distinction between salary and compensation is plainly obvious as used in both the constitution and the statutes.

VII.   The clerk of the supreme court receives a salary for the performance of the entire general duties of that office, but the reporter of decisions receives a fixed compensation for the performance of specific duties.   An act fixing the salary of the clerk of the supreme court cannot fairly be so construed as to affect the compensation of the reporter of decisions in the absence of such manifest legislative intention.

VIII.   If the latter acts deprive the reporter of decisions

of his compensation of $600 a year, it would seem clear that they also deprive his assistant of his compensation of not to exceed $700 per volume of reports, as specified in the same section of the law of 1883. If section 5 of the said act is repealed or superseded, it necessarily follows that relator is deprived of the assistance of an attorney as well as of his own compensation. The attorney-general will hardly contend that relator is not authorized to employ a competent attorney to assist him in the preparation of the decisions, and yet, failing to make such contention, he virtually concedes away his case at bar.

IX. The preparation of the decisions of the supreme court for publication has no necessary nor germane connection with the duties of either the secretary of state or of the clerk of the supreme court. They are duties that are imposed upon him by the statute alone, and can hardly be said to be official in character. For the performance of such services he is entitled to the statutory compensation besides his official salary. (*Love* v. *Baer*, 47 Cal. 364; *Malone* v. *State*, 51 Cal. 549; *Green* v. *State*, 51 Cal. 577; *Niles* v. *Muzzy*, 33 Mich. 61.)

*James R. Judge*, Attorney-General, for Respondent:

I. At the time the duties of the clerk of the supreme court were imposed upon the secretary of state, the salary of that officer was by law fixed at $2,400 per year, which law was in force and effect at all times during which relator claims compensation for services as reporter of supreme court decisions. Had it been the intention of the legislature to allow additional salary to relator for these added duties, it could very readily have had its intention made manifest in apt and unmistakable language. Having failed to do so, it is beyond question that the salary of $2,400 fixed by the legislature of 1891 as the salary of the secretary of state was intended to be in full payment and the only salary to be paid him for all duties and *ex officio* duties which he should perform.

II. Relator is only reporter of the supreme court decisions, if at all, by virtue of his office of secretary of state and *ex officio* clerk of the supreme court, and is only entitled to demand and receive the salary of $2,400 per year fixed by

the act of 1891 as salary of secretary of state by reason of. his qualification and performance of the duties of these, offices. This being the case, can it be successfully denied or maintained that the acts of 1891 and 1893 do not in effect repeal the act of 1883, in so far, at least, as the salary of clerk of the supreme court for reporting the decisions of that court is concerned, which is the question in the case?

III. While it may be conceded that the repeal of a law by implication is not favored, still a statute may be repealed by express words or by necessary implication. Repeal by implication takes place whenever, by subsequent legislation, it becomes apparent that the legislation did not intend the former act to remain in force. (*Christy* v. *Board of Supervisors*, 39 Cal. 3; *Ex parte Henshaw*, 73 Cal. 506; *Pennie* v. *Rois*, 80 Cal. 270; *Capron* v. *Hitchcock*, 98 Cal. 432.)

IV. The salary of the secretary of state after January 1, 1895, was by the act of the legislature of the state of Nevada, approved March 21, 1891, fixed at $2,400, and it was not within the power of the legislature to increase or diminish the amount thus provided to be paid that officer during the term for which relator was elected, as is sought to be done in the case at bar. Such a course is in direct violation of the plain provisions of the constitution of this state. (Art. XV, sec. 9, Const. Nev.)

V. Again, it is provided by article XVII, section 5, of the constitution, that "no officer mentioned in this section shall receive any fee or perquisites to his own use for the performance of any duty connected with his office, or for the performance of any additional duty imposed upon him by law." (*Crosman* v. *Nightingill*, 1 Nev. 323.)

VI. At the time the act of the legislature above cited (Stats. 1883, p. 78) was approved, to wit: March 1, 1883, it was provided by section 32, article IV, of the constitution of the state of Nevada, as follows: "The legislature shall provide for the election by the people of a clerk of the supreme court, county clerks, county recorders, who shall be *ex officio* county auditors, district attorneys, sheriffs, county surveyors, public administrators and other necessary officers, and fix by law their duties and compensation." This section of the constitution was thereafter amended, which amendment was

submitted to the people of the state and approved at the special election held February 11, 1887.

VII. This amendment became a part of the constitution when it was adopted by the people, and was in force at the date relator entered upon the discharge of the office of secretary of state, ever since has been, and now is, a part of the constitution of this state. From and after the time this amendment became a part of the constitution of Nevada, the office of clerk of the supreme court, with all its attendant duties, ceased to be a constitutional office, and without legislative creation then or thereafter ceased to exist as an office. Without an office there can be no officer to fill it, and it will not be seriously contended that there is any such office in this state to-day, existing under the constitution or created by legislative enactment, as the one which the relator claims to perform the duties of in his capacity of secretary of state and *ex officio* clerk of the supreme court, under which latter office he claims to be entitled to the compensation prayed for in his petition; and if there be no such office, there certainly cannot be any authority for payment to him of compensation for services in performance of the duties of an office which does not exist.

By the Court, BONNIFIELD, J.:

The relator petitions this court for a peremptory writ of *mandamus* to compel the respondent, as state controller, to draw his warrant on the state treasurer, in favor of relator, for the sum of $1,200, the sum appropriated for him by an act of the legislature entitled "An act to pay the deficiencies in the appropriations for the years 1895 and 1896," approved February 16, 1897. The relator is secretary of state and his term of office commenced on the 8th day of January, 1895. His salary was fixed at $2,400 per annum by an act entitled "An act reducing and regulating the salaries of certain state officers of the state of Nevada." (Stats. 1891, 104.) By an act entitled "An act to consolidate certain state offices in the state of Nevada" (Stats. 1893, 32), it is provided: "The secretary of state shall be *ex officio* clerk of the supreme court and *ex officio* state librarian." By its terms this act took effect on the 8th day of January, 1895, and by virtue of said

act the relator has been *ex officio* clerk of the supreme court from said date and has been performing the duties of that office.

An act to provide for the publication and distribution of the Nevada Reports (Stats. 1883, 78) provides:

" Sec. 2.   The clerk of the supreme court shall prepare such decisions for publication, by giving the title of each case, a syllabus of the points decided, a brief statement of the facts bearing on the points decided (when the same are not sufficiently stated in the opinion), the names of counsel and a reference to such authorities as are cited and have a special bearing on the case, and it shall be the further duty of said clerk to prepare a full and comprehensive index to each volume of said decisions."   *   *   *

" Sec. 5.   Said clerk of the supreme court shall receive for his compensation as reporter of said decisions the sum of $600 per year, payable out of the same fund and in the same manner that the salaries of other state officers are paid; and he may, in his discretion, employ a competent attorney to assist him in the preparation of said decisions, who shall be allowed a reasonable compensation for his services not to exceed $700 for each volume."

The relator, during each of the years 1895 and 1896, prepared for publication, in accordance with the requirements of said act of 1883, all the decisions of the supreme court rendered during said two years, and to pay for said services said appropriation of $1,200 was made by said act of 1897. Counsel for relator contends that said act of 1883 and every part thereof remains in force.   If this contention be correct, the writ prayed for must be granted.

The attorney-general contends, for respondent, that the above-named acts of 1891 and 1893, in effect, repealed the said act of 1883 in so far as it provides compensation for the clerk's services as reporter of the decisions of the supreme court.

The rule that courts are bound to uphold the prior law if it and a subsequent one may subsist together, or if it be possible to reconcile the two together, is well settled.   (*McCool v. Smith*, 1 Black, 470; Endlich on the Interpretation of Statutes, sec. 210; see the numerous authorities cited by note

1.) Unless the latter statute is manifestly inconsistent with and repugnant to the former, both remain in force. (13 N. J. Ch. Rep. 290, and cases cited.) A general statute without negative words will not repeal the particular provisions of a former one unless the two acts are irreconcilably inconsistent. (*State ex rel. Dunkle* v. *Beard*, 21 Nev. 218.) The repeal, total or partial, of statutes by implication is not favored. As to this rule there can be no difference of opinion, and further authorities need not be cited.

Under the well-established rules for the construction of statutes has the provision of section 5 of the act of 1883, which allows the clerk compensation as reporter of the decisions of the supreme court, been repealed? This is the vital question in this case.

From the organization of the state government up to 1875 the office of the clerk of the supreme court was on the fee system. For certain specified acts to be performed he was allowed certain specified fees. By the statutes of 1875, 84, he was provided with a salary, and it was provided that the fees collected by the clerk thereafter " shall be paid into the state treasury." By an act (Stats. 1881, 43), his salary was reduced and fixed at $2,400 a year on and after the 1st day of January, 1883, and thus the salary remained up to January, 1895. By the act entitled "An act to provide for the publication and distribution of Nevada Reports," approved March 1, 1883, 78, *supra*, in addition to his salary of $2,400 he was allowed for compensation as reporter of the decisions of the supreme court the sum of $600 per year. It is evident that the salary was given him as compensation for performing the specific duties for which he had formerly been allowed certain fees, and that the compensation as said reporter was allowed him for the specific work of preparing the decisions of the supreme court for publication, which work does not come within or belong to the class of duties properly pertaining to the office of clerk of the supreme court. It requires particular skill and legal ability, which the class of duties belonging to the clerk's office does not require, and evidently for this reason the legislature authorized the clerk to employ a competent attorney to assist him in this work, which he did, and to pay for such assistance the legislature made an

appropriation for each volume published since the work was placed in the hands of the clerk.

The act of 1893, *supra*, which makes the secretary of state *ex officio* clerk of the supreme court, in effect abolished the $2,400 salary of the clerk. That result was evidently intended by the legislature.

We are of opinion that that result was the only result intended to be accomplished, so far as reducing the expenses or compensation incident to the clerk's office was concerned. We do not think that it can be reasonably inferred that the legislature, by abolishing a salary which had been provided in lieu of former fees for performing certain specific duties imposed upon the clerk by law, intended thereby to also abolish the compensation allowed him for performing certain other specified duties imposed upon him by another law, the latter duties being no part of the duties for the performance of which the salary had been given. We fail to find any conflict between the provision in question of said section 5 of the act of 1883 and any provision of any other act.

It is argued by the attorney-general that: "The salary of the secretary of state after January 1, 1895, was by the act of the legislature of the state of Nevada, approved March 21, 1891, fixed at $2,400, and it was not within the power of the legislature to increase or diminish the amount thus provided to be paid that officer during the term for which relator was elected, as is sought to be done in the case at bar. Such a course is in direct violation of the plain provisions of the constitution of this state." And he cites section 9, article XV, of the constitution, which provides: "The legislature may at any time provide by law for increasing or diminishing the salaries or compensation of any of the officers whose salary or compensation is fixed in this constitution; *provided*, no such change of salary or compensation shall apply to any officer during the term for which he may have been elected."

The salary of the secretary of state of $2,400 was fixed by said act of 1891 long prior to the commencement of the relator's term of office. The compensation allowed the clerk as reporter of said decisions was fixed by said act of 1883. The act of 1893, in making the secretary of state *ex officio* clerk

of the supreme court, fixed the relator's compensation as reporter of said decisions two years prior to relator's term of office. The said salary or said compensation fixed for the term of office to which relator has been elected has in no manner been changed; hence, section 9, article XV, of the constitution does not justify the respondent's refusal to draw said warrant.

It is further contended for respondent " that the action of the legislature in appropriating the sum of $1,200, for relator's services as reporter of the decisions of the supreme court during the years 1895 and 1896, was in direct violation of the constitution." And section 5, article XVII, of the constitution is cited, which provides certain salaries for the several state officers for the first term of office succeeding the formation of the state government, among which officers the secretary of state is named, and said section provides: "No officer mentioned in this section shall receive any fee or perquisites to his own use for the performance of any duty connected with his office, or for the performance of any additional duty imposed upon him by law."

In *State, ex rel. H. C. Cutting, Superintendent of Public Instruction,* v. *C. A. LaGrave, State Controller,* 23 Nev. 120, the court said: " The office of superintendent and the various *ex officio* offices mentioned in these statutes are each a separate and distinct office, and their being vested in the same person does not change their nature in this respect." The court cited *State* v. *Laughton,* 19 Nev. 202; *People* v. *Durick,* 20 Cal. 94; *Kinsey* v. *Kellogg,* 65 Cal. 111.

Under the above authorities the offices of secretary of state, of *ex officio* clerk of the supreme court and the office of reporter of the decisions of the supreme court are separate and distinct offices, and their being vested in the same person does not change their nature in this respect.

If it was permissible under the constitution for the legislature to confer upon the secretary of state a separate and distinct office charged with separate and distinct duties, in no way naturally pertaining to the duties of the secretary's office, and he performs these duties, we are of opinion that there is no provision of the constitution that prohibits the

legislature from providing for paying him for said services. (*Love* v. *Baehr,* 47 Cal. 364.)

In *Crossman* v. *Nightingill,* 1 Nev. 323, Lewis, C. J., speaking for the court, said: "The constitutional restriction imposed by section 9, article XV, and section 33, article IV, is doubtless intended only to prevent the increase of salary or compensation of officers, as such officers, or for duties naturally belonging to their positions, and can scarcely be extended to prevent the allowance of a compensation to officers upon whom duties or responsibilities in no wise connected with their offices are imposed. * * * It would be putting a construction too restricted upon the constitutional limitation to hold that the provision which prohibits the increase of salary or compensation would prevent the holding of two offices by the same person, or the receipt of the salary of both by the same individual. We think the limitation in article XV, section 9, and article IV, section 33, should be confined to the increase of salary or compensation for the discharge of duties naturally belonging to a certain office and should not prohibit compensation for the performance of other and independent duties in no wise belonging to it."

The annual compensation of $600, allowed the relator as reporter of the decisions of the supreme court, is certainly not a fee or perquisite, in the meaning of section 5, article XVII, *supra.* Said section 5 of the act of 1883 not having been repealed, and not being in conflict with any provisions of the constitution, the writ of mandate prayed for must issue.

It is so ordered.

### ON PETITION FOR REHEARING.

By the Court, BONNIFIELD, J.:

The respondent, by the attorney-general, has filed a petition for rehearing upon the grounds, stated in brief and in substance, that at the time of the passage of the legislative act of 1883 under which the relator claims his compensation as reporter of the decisions of the supreme court as *ex officio* clerk of said court, it was provided by section 32, article IV, of the constitution that "the legislature shall provide for the election by the people of a clerk of the supreme

court," and the several county officers named in said section; that on the 11th day of February, 1887, said section was amended, and as amended provides: "The legislature shall have power to increase, diminish, consolidate or abolish the following county officers," naming them, "and the legislature shall provide for their election by the people"; that, at the time this amendment was adopted, the office of clerk of the supreme court, with all its attendant duties, ceased to be a constitutional office, and, without legislative creation then or thereafter, ceased to exist as an office; that the legislature has not attempted to create the office of clerk of the supreme court, or *ex officio* clerk of the supreme court, since said amendment of the constitution in 1887; that there is not now any warrant or authority of law for the existence of any such office or officer under the constitution or laws of this state. And he adds: "Without an office there can be no officer to fill it, and it will not be seriously contended that there is any such office in this state to-day existing under the constitution, or created by legislative enactment, as the one which the relator claims to perform the duties of in his capacity of secretary of state and *ex officio* clerk of the supreme court, under which latter office he claims to be entitled to the compensation prayed for in his petition, and if there be no such office, there certainly cannot be any authority for payment to him of compensation for services in performance of the duties of an office which does not exist."

If the contention of the attorney-general be true that, since the adoption of the amendment of the 11th of February, 1887, we have had no constitutional office of clerk of the supreme court, and that since that time the legislature has failed to create a legislative office of clerk of the supreme court, or an office of *ex officio* clerk of the supreme court, and that no such office or officer has existed under the constitution or the laws since that date, then the people by the adoption of said amendment and the legislature by non-action have practically abolished the supreme court for the last ten years. For it is provided, in section 8, article XV, that "no judgment of the supreme court shall take effect and be operative until the opinion of the court in such case shall be filed with the clerk of said court."

It will be observed that said original section 32 required the legislature to provide for the election of the clerk of the supreme court by the people, and that section 32, as amended in 1887, omits mention of said clerk, and it seems to be the theory of counsel for respondent that this omission had the effect of causing the office of clerk of the supreme court to cease to exist as a constitutional office.

The clerk of the supreme court was elected at the general election in 1864, with other state officers, under the provisions of section 18, article XVII, of the constitution, to hold his office till the first Tuesday after the first Monday of January, 1867, and until his successor was qualified. On March 9, 1866 (Gen. Stats. 459), the legislature provided for the election of all state and county officers at the general election thereafter to be held in November of that year and at subsequent general elections. In obedience to the requirements of said original section 32, article IV, of the constitution, the said act of 1866 provided: " Sec. 12.   At the general election in the year eighteen hundred and sixty-six, and at the general election every four years thereafter, the clerk of the supreme court shall be chosen by the qualified electors of the state, and shall hold his office for the term of four years from the first Monday of January next after the election, and until his successor is qualified."

The fact that the provision of the original section 32 of article IV, concerning the clerk of the supreme court, was left out of said section as amended in 1887, in no manner affects the above provisions of the statute, and in no degree affects the constitutional character of the office of clerk of the supreme court.   The legislature having fully complied with the terms of the original provisions of said section as to the clerk, by providing for his election at the general election in 1866, and at the general election every four years thereafter, there was no particular necessity for incorporating the omitted provisions in the amended section, and there would have been no great propriety in doing so.   The constitution not only requires the opinions of the supreme court to be filed with its clerk before its judgments shall take effect or be operative, but requires the clerk of the supreme court to

keep his office at the seat of government.    (Secs. 8, 12, art. XV.)

We conclude that we still have an office of clerk of the supreme court, and that it is a constitutional office; that by virtue of the statute (1893, 32) which provides: "The secretary of state shall be *ex officio* clerk of the supreme court," the secretary of state is *ex officio* such clerk, or is the clerk of the supreme court by virtue of his office of secretary of state.

The contention of counsel for the respondent being without merit, the petition for rehearing is denied.