[No. 1940]

THE STATE OF NEVADA, EX REL. LEONARD B.
FOWLER, PETITIONER, v. J. EGGERS, STATE CON-
TROLLER OF THE STATE OF NEVADA, AND D. M.
RYAN, STATE TREASURER OF THE STATE OF
NEVADA, RESPONDENTS.

1. STATES—GENERAL APPROPRIATION BILLS—CONSTRUCTION.
    The setting apart in a general appropriation bill of various
    funds to cover payment of salaries and other expenses of the
    state government, while it may reserve the money for that pur-
    pose, does not, in itself, authorize the payment of the money
    from the fund.

2. OFFICERS—CONSTRUCTION—RETROACTIVE EFFECT.
    Words in a statute simply specifying that an officer shall
    receive a designated compensation have no retroactive effect,
    unless there is something in the language indicating it.

3. ATTORNEY-GENERAL — GENERAL APPROPRIATION BILL — CONSTRUC-
    TION—RETROACTIVE EFFECT.
    A general appropriation bill approved March 22, 1909 (Stats.
    1909, c. 140), appropriated for the years 1909 and 1910, $4,800
    for salary of a deputy attorney-general. An act approved on
    the following day (Stats. 1909, c. 159) provided that the salary
    of a deputy attorney-general should be $2,400 a year, payable
    out of the general fund in the same manner that salaries of
    other state officers are paid, which, under an earlier statute,
    was monthly. There was nothing in either of the acts in the
    nature of a relief bill. Held, that the intent was that the
    deputy attorney-general should be paid monthly in the future,
    and an incumbent who, during the part of the year before the
    approval of the act, had acted as stenographer in the attorney-
    general's office, drawing a salary from the state therefor, and
    had also acted as deputy attorney-general under a previous
    statute not providing compensation for such office, was not
    entitled under the acts to receive the designated salary for the
    portion of the year previous to their passage.

ORIGINAL PROCEEDING. *Mandamus* by the State on
the relation of Leonard B. Fowler against J. Eggers,
State Controller, and another. **Writ denied.**

The facts sufficiently appear in the opinion.

*Thomas J. Salter*, for Petitioner.

*R. C. Stoddard*, Attorney-General, for Respondents.

By the Court, TALBOT, J.:

This is an application for a writ of mandate requiring
the state controller to draw his warrant in favor of rela-

tor for salary as deputy attorney-general for the months of January and February, and for that part of March extending from the 1st to the 22d, 1909.

During all the times mentioned, and previously thereto, he was acting as stenographer in the attorney-general's office, and received from the state for his services in that connection $100 per month. An act approved February 8, 1908, authorized the attorney-general to appoint deputies, but did not provide for the payment of any compensation to them by the state. On July 6, 1908, relator was appointed and qualified, and has since served as deputy attorney-general.

In the general appropriation bill approved March 22, 1909, there was appropriated, with other numerous items for the support of the government of the state for the years 1909 and 1910, for salary of stenographer in the attorney-general's office $2,400, and for salary of the deputy attorney-general $4,800. (Stats. 1909, c. 140.)

In an act approved March 23, 1909, section 1 provides that "from and after the passage of this act the salary of the deputy secretary of state shall be $2,400 per annum, payable out of the general fund," and section 2 that "the salary of one deputy attorney-general is hereby fixed at $2,400 per annum, payable out of the general fund in the same manner as salaries of other state officers are paid." (Stats. 1909, c. 159.) Another act, approved March 22, 1909, provided that "from and after the passage of this act, the salary of the private secretary to the governor shall be $2,400 per annum, payable out of the general fund." (Stats. 1909, c. 141.)

The general appropriation bill for 1909 and 1910 appropriated for the salary of the governor's private secretary $4,800, and a like amount for the deputy secretary of state, sufficient to cover the salaries of those deputies as increased for the full period of two years, and including the time within the two years prior to the passage of the acts increasing the salaries; but it does not appear that they, or others, excepting the relator, who had their salaries increased by the legislature, and for whose salaries

as increased amounts were inserted in the general appropriation bill sufficient to cover their salaries for the full two years as increased, made any application for the payment of increased salaries for services prior to the time that the acts mentioned raising their salaries took effect.

It is claimed that under this general appropriation bill approved March 22, 1909, appropriating $4,800 for the salary of the deputy attorney-general for two years, and under the act of March 23, 1909, fixing the salary of one deputy attorney-general at $2,400 per annum, payable out of the general fund in the same manner as salaries of other officers are paid, the relator is entitled to draw the full $4,800 for the two years, and more particularly that part of it running at the rate of $200 per month, from the 1st of January to the 22d of March, 1909, during which time he served both as deputy attorney-general and as stenographer in the attorney-general's office, and during which period he was paid only as such stenographer. As money cannot be paid out of the state treasury except under an act of the legislature indicating an intention that it shall be paid, the question arises whether there is anything in these acts which indicates that the legislature intended to pay the relator for services as deputy attorney-general for the part of the year previous to the passage of the acts, during which he was acting and received compensation as stenographer.

We find nothing in either of the acts which evinces such an intention. The setting apart in the general appropriation bills of various funds to cover the payment of salaries and the payment of other expenses of running the state government, while it may reserve the money for that purpose, does not, in itself, authorize the payment of the money from the fund. Notwithstanding the appropriations in the general appropriation bill, claims, for instance, for fuel and stationery, or for salaries, would not be payable until the stationery and fuel or the services had been furnished, and part or all of them might never be furnished, and the paying out of the various sums appropriated is ordinarily, and in the absence of

special language, dependent upon and authorized by other acts.

As we held in *State* v. *Eggers*, 29 Nev. 469, 16 L. R. A. (N. S.) 630, it is not necessary that money be appropriated from the general fund for the payment of the salaries of state officers when the legislature has made direct provision for the payment of their salaries monthly. Hence, here the deputy attorney-general would be entitled to his salary, under the act of March 23d creating it, from that time without any appropriation having been made for it in the general appropriation bill. There is nothing in either of these acts in the nature of a relief bill, or, as we construe them, indicating that the legislature intended to pay for services rendered before either act was passed. Under the principle stated in that case, it is necessary that it appear that the legislature intended that payment be made for services out of the proper fund. The provision in the later act, which could be considered to control in case of conflict, that "the salary of the deputy attorney-general is fixed at $2,400 per annum, payable out of the general fund in the same manner that salaries of other state officers are paid," which under an earlier statute is monthly, indicates an intention to have him paid monthly in the future, instead of one that payment be made by way of relief for nearly three months' previous services, while relator was acting and receiving compensation as stenographer. Bills for such relief are usually specific, stating the amount and the name of the person to whom it is to be paid. It has frequently happened that some of the appropriations made for two years intervening between the sessions of the legislature have been larger than expended, in which case a part has lapsed into the treasury.

At the time of preparing and introducing the general appropriation bill, the legislature probably did not know the exact date upon which the bill providing the salary for the deputy attorney-general would be approved and become effective, and for that reason could not provide in the general appropriation bill the exact amount neces-

sary to pay this salary from the time of the passage of the act providing for it, but inserted an amount which would cover the salary for the full period of two years, so that there would be ample in the fund.

We think the mere appropriation of the $4,800 for the two years, considered in connection with the act passed one day later, did not authorize the controller to draw warrants for salary for the period prior to the passage of the acts. We are unable to say that it was the intention of the legislature to pay the deputy attorney-general for the services rendered prior to such passage. Words in a statute simply specifying that an officer shall receive a designated compensation have no retroactive effect, unless there is something in the language indicating it. It is the rule ordinarily that the mere designation of an amount in the general appropriation bill sets apart the sum specified, so that it may be used to pay some indebtedness of the state authorized and incurred under some other statute. We think the mere setting apart of the money in the general appropriation bill for the two years is too vague to indicate an intention on the part of the legislature to pay the relator a salary for a period prior to the passage of the act. and while he was drawing salary from the state for services rendered in another capacity.

The statement of the court, and cases cited in the case of *State* v. *LaGrave*, 23 Nev. 125, are apparently conclusive against the principal contention advanced on behalf of the relator: "The purpose of the general appropriation act is to provide funds for carrying on the state government. The mere fact that money is appropriated for an officer's salary, or for any other purpose does not of itself, make that money payable to any particular person. There must still be some authority of law to justify the controller in drawing a warrant for it, or the treasurer in paying it out. (Gen. Stats. 1811.) If more is appropriated than is sufficient for the particular purpose designated, it is to be covered back into the general fund at the end of the fiscal years. (*State ex rel. Wilkins* v. *Hallock*, 20 Nev.

73.) If less, it does not repeal a former act fixing an officer's salary, unless such clearly appears to have been the intention. (Mechem, Pub. Off. 857; *State* v. *Steele*, 57 Tex. 200; *State* v. *Cook*, 57 Tex. 205.)"

See, also, *Bradley* v. *Esmeralda County*, 32 Nev. 168.

The application for the writ is denied.