[No. 1576.]

# WASHOE COUNTY, APPELLANT, *v.* EUREKA COUNTY, RESPONDENT.

PAUPERS—LIABILITY OF COUNTY FOR RELIEF. The liability of a county for the support of its poor exists only in pursuance of the positive provisions of the statute, and, in order for a county to be liable in such a case, it must come squarely within the statute.

IDEM—IDEM—NOTICE. When one county furnishes relief to a pauper resident of another county, the latter county incurs no legal liability to the former county therefor, unless the statutory notice is given.

IDEM—IDEM—IDEM—TIME OF GIVING. It is required by section 8 of the act relating to the support of the poor that the notice therein provided for shall be given "immediately" upon the furnishing of the temporary relief—that is, as soon as practicable, or without unnecessary delay. When not so given, a county furnishing relief to a pauper resident of another county cannot recover of the other county for any relief furnished prior to the giving of the required notice.

IDEM—IDEM—IDEM—ESSENTIAL REQUISITES OF NOTICE—COUNTY COMMISSIONERS. It is essential to the validity of a notice given under the provisions of section 8 of the aforesaid act, that it shall emanate from the board of county commissioners who are charged with the care of the poor, and that it shall tend to show that it is from that official body, and that it be attested by the clerk of such board.

IDEM—IDEM—IDEM—IDEM—ATTESTATION—COUNTY CLERK. An attestation of the notice, to be served upon the board of county commissioners of another county under the provisions of the act relating to the support of the poor, by the county clerk, simply as such clerk, is not an attestation by the clerk of the board of county commissioners, as the statute requires, for the reason that the two offices are distinct.

IDEM—IDEM—IDEM—IDEM—IDEM. Gen. Stats. p. 541, secs. 7, 8, provide that when a pauper, applying to county commissioners for relief, has not been a resident of the county for six months such commissioners shall provide temporary relief, and immediately notify the county commissioners of the county where such pauper last had a six months residence, which notice shall be in writing, attested by the clerk of the board, and directed to the county commissioners of such county; and that the county furnishing such necessary temporary relief shall have a claim therefor on refusal of the county where he had acquired a residence to remove him: *Held,* that a notice given by a county clerk, and attested by him as such, and not as clerk of the county commissioners, notifying another county that a pauper resident thereof had applied for aid, etc., not directed to the county commissioners of such county, was insufficient, in the absence of proof that it was received by them, to charge such county with liability under the statute, though such clerk was ex officio clerk of the board of county commissioners of the county furnishing relief.

Appeal from the First Judicial District Court, Ormsby County; *C. E. Mack*, Judge.

Action by Washoe County against Eureka County. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

The facts sufficiently appear in the opinion.

*E. L. Williams*, District Attorney, and *Frank H. Norcross*, for Appellant:

I.  The evidence establishing that the notice was shown to one of the commissioners, personally, and afterwards filed with the clerk of the board of commissioners, is sufficient proof of receipt of such notice by the commissioners of Eureka county.  The evidence shows a sufficient service of the notice to be binding on the defendant county.  In cases of the character of the one before the court, the only object of the notice is to apprise the county or municipality to be charged with relief that a pauper is receiving relief from another county or municipality, and that the county notified will be held responsible.  If the law is substantially complied with it is sufficient.  (*Cerro Gordo Co.* v. *Wright Co.*, 50 Iowa, 442; Code of Iowa, 1873, sec. 1357; *La Crosse* v. *Melrose*, 22 Wis. 462; *Newton* v. *Danburry*, 3 Conn. 558; *Elsworth* v. *Houlton*, 48 Me. 421; *Kenneburkport* v. *Buxton*, 26 Me. 66; *Westminster* v. *Bernardson*, 8 Mass. 104; *Rogers* v. *Newburry*, 105 Mass. 534; 18 Am. & Eng. Enc. 816, note 5, 816.)

II.  There is no reason for applying to such notice under our statute the strict rule applied by the Massachusetts cases to such notices under the statutes of that state, because that made the notices conclusive upon the town notified, of all the facts stated, unless the notice was denied within a limited time.  In *Cerro Gordo Co.* v. *Wright Co.*, 50 Iowa, 443, the court says: "It surely cannot be claimed, where a person having a legal settlement in one county becomes sick and disabled in another, that it is necessary to convene the boards of supervisors of both counties in order that notice may be given so that the proper county may be charged with the aid furnished."

III.  As having a bearing upon the question of the notice and the service thereof, there are some important facts which

evidently were inadvertently omitted from the copious find-
ings of the trial court. It appears, from the official records
of Eureka county, that for several years prior to August 1,
1892, this man Fitzgerald was an inmate of the Eureka county
hospital; and, further, that, at a regular meeting of the board
of commissioners of Eureka county, there was entered upon
the minutes of the board the following order: "*Ordered,* that
$50 be allowed for the purpose of assisting John Fitzgerald,
an indigent sick person, to reach his friends in San Fran-
cisco, and that said $50 be drawn by Commissioner Ferraris,
who is authorized to carry out the above order." It there-
fore appears that, at the time the notice was sent by the clerk
of Washoe county, all of the facts regarding this man Fitz-
gerald were well known to the officials of Eureka county.
There was no need of any notice to inform them that Fitz-
gerald was resident of Eureka county, or that he was a pau-
per and in need of relief. All that was necessary was to
inform them that Fitzgerald was in Washoe county and
request them to remove him. In view of all the facts in the
case, it seems to us ridiculous that sufficient information was
not conveyed to the board of commissioners of Eureka county
to be binding. We submit that, in view of the facts of this
case, Eureka county is estopped from questioning the formal-
ity and due service of this notice.

IV. The putting of a letter into the mail is made, by the
statute for the support of the poor, sufficient evidence that
notice was given. (Gen. Stats. 1988; 18 Am. & Eng. Enc.
Law, 888c.)

*George A. Bartlett,* District Attorney, and *Thomas Wren,* for
Respondent:

I. Section 8 provides that the board of county commis-
sioners granting temporary relief to a pauper a resident of
another county shall notify the board of commissioners of
the county where the pauper last resided in regard to the
action taken, and shall request the pauper's removal to the
proper county. The clerk of the board of county commis-
sioners is not authorized to send a notice either upon his own
motion or by direction of the chairman of the board. The
only authority that he has to act in the premises is to attest

the notice sent by the board that he is the clerk of the board of the county of which the pauper was last a resident.

II.  It seems clear that the law makes it the duty of the board to whom a non-resident pauper applies for relief to require satisfactory evidence that he is a pauper and in need of immediate relief, and that he was a resident of some other county of the state within the six months immediately preceding his arrival in the county where he makes his application, and that the facts should be entered of record and the proceedings of the board, and that then an order should be made directing the clerk to make a copy of the record, certify to it under the county seal and forward it to the board of county commissioners of the proper county, accompanied with the proper request.

III.  The statute for the relief and support of the indigent poor is purely statutory and to render the county liable the case must come fairly within the statute.  The whole matter is entirely within the control of the legislature, and the duty of aiding and supporting, or of relieving, those temporarily in need of assistance may be imposed by that body upon counties or towns in such manner as it may deem proper. (*Lander Co.* v. *Humboldt Co.*, 21 Nev. 415.)

By the Court, BONNIFIELD, C. J.:

This action was brought by Washoe county against Eureka county to recover the sum of $2,132 for relief furnished by the plaintiff to one John Fitzgerald, in plaintiff's county hospital, from the 23d day of August, 1892, to the 30th day of June, 1898.

It is alleged that Fitzgerald was a pauper and resident of Eureka county.  The case was tried by the court without a jury.  The trial resulted in a judgment in favor of the defendant for its costs, taxed at $59.  This appeal is from the judgment and an order denying plaintiff's motion for new trial.

"An act relating to the support of the poor" vests the board of county commissioners of the several counties with entire and exclusive superintendence of the poor in their respective counties.  (Gen. Stats., p. 540.)

Section 7 of that act provides:  "When an application is

made by any pauper to the board of county commissioners of any county in this state for relief, it shall be necessary for said commissioners to require of said pauper satisfactory evidence that he or she has been a resident of said county for six months immediately preceding the day upon which such application is made, or if such is not the case, satisfactory evidence in regard to where said pauper last resided for six months prior to arrival in the county where such application is made."

Section 8 provides: " When application is made by any pauper to the board of county commissioners aforesaid, and it shall appear, to the satisfaction of said board, that the person so applying for relief has resided in said county agreeably to the provisions of the foregoing section of this act, said pauper shall be entitled to all of the relief provided by this act; but if, on the contrary, it shall appear to the satisfaction of said board, that such pauper has not been a resident of said county agreeable to the provisions of the foregoing section, but that said pauper, previous to removing to the said county where said application is made, was a resident of some other county of this state, said board shall provide temporary relief for said pauper and immediately notify the board of county commissioners of the county where said pauper last had a residence for six months, and said notice shall be in writing, duly attested by the clerk of the board of county commissioners, and deposited in the postoffice, addressed to the board of county commissioners of said county, and it shall be the duty of the board of county commissioners receiving said notice to cause said pauper to be immediately removed to their county, and pay a reasonable compensation for the temporary relief afforded, and if said board of commissioners neglect or refuse to remove said pauper, the county affording relief shall have a legal claim against said county for all relief necessarily furnished and may recover the same in a suit at law."

A great many questions were raised and elaborately argued by respective counsel as to the powers and duties of boards of county commissioners with respect to furnishing relief to paupers, and as to what was done and what not done by the

Washoe county board, in Fitzgerald's case, with respect to complying with the provisions of said sections 7 and 8 of the statute. Appellant's counsel claimed that the evidence showed that said board did all that was necessary under the statute, while counsel for respondent contended that there was no evidence tending to show that the board did anything in that respect. It will be sufficient to consider the questions raised concerning the notice required to be given by said section 8.

The liability of a county for the relief and support of its poor is purely statutory, and, to render a county liable, the case must come fairly within the terms of the statute. The liability exists only in pursuance of the positive provisions of the statute. (*Lander Co.* v. *Humboldt Co.*, 21 Nev. 415, 32 Pac. 849.)

When one county furnishes relief to a pauper resident of another county, the latter county incurs no legal liability to the former county therefor, unless the statutory notice is given, however strictly the board of commissioners of the county furnishing the relief may follow the requirements of the statute in other respects.

With respect to such notice the witnesses testified to their best recollection as to what had occurred about six years before in relation thereto, and the evidence on the part of the plaintiff was to the effect that T. K. Hymers, the chairman of the board of county commissioners of Washoe county, requested or directed O. H. Perry, the county clerk of that county, to notify the board of county commissioners of Eureka county, through their clerk, of John Fitzgerald being an inmate of the hospital of Washoe county, and to ask them what disposition they wished made of him. (Hymer's testimony.)

O. H. Perry, the county clerk of Washoe county in 1892, in answer to questions, testified: "Question—Did you have anything to do, in your official capacity as county clerk, concerning the said John Fitzgerald? You may state fully, Mr. Perry, what you did in your official capacity relative to the said John Fitzgerald. Answer—I notified the board of county commissioners of Eureka county that he was here

in the county hospital in Washoe county, and would be kept at the expense of Eureka county, and for them to come and take him away immediately.

"Q.—How did you notify them?    A.—By the usual clerk official paper under seal.

"Q.—To whom was the communication you have referred to addressed?    A.—I addressed the letter to the board of county commissioners of Eureka county, Nevada.

"Q.—What is your best recollection as to the words used by you in the address upon the envelope?    A.—'To the Clerk of the Board of County Commissioners, Eureka County, Nevada.'"

Witness testified that he put the communication in an envelope, which was stamped with United States postage stamps of proper amount, and mailed it; and that his authority for making out and sending the said notice was the request of the chairman of the board of commissioners of Washoe county.

W. S. Beard, who was the county recorder and ex officio auditor of Eureka county in 1892, was called as a witness for plaintiff and testified that some time after Fitzgerald left Eureka county, he (witness) received in his mail a letter from Washoe county officials; that it was a demand, or notification, or something of that kind, stating that John Fitzgerald was in Reno; that he showed the letter to Ferraris (a county commissioner of Eureka county) at his place of business, and took it upstairs, and turned it over to the clerk, or his deputy; that the envelope containing the letter was addressed to the recorder or clerk; that it was more than likely that it was addressed to the recorder; that on the inside of the letter it was addressed to the board of county commissioners, or the clerk.

The above is the substance of the testimony relating to said letter, or notice, or communication given on the part of the plaintiff.

The testimony on the part of the defendant was to the effect, and it tends to show, that no such notice, letter, or communication was received by the board of county commissioners of Eureka county.

There is no evidence that said board received any notice

from the board of county commissioners of Washoe county that they had furnished any relief to said pauper, until in July, 1898, when they received a bill from the plaintiff, on which this suit was brought. That was nearly six years after said pauper was admitted to the Washoe county hospital, and a few days after the expiration of the 2,132 days the plaintiff had furnished relief to said pauper.

It is required by said section 8 that the notice therein provided for shall be given "immediately" upon the furnishing of the temporary relief; that is, as soon as practicable, or without unnecessary delay. When not so given, a county furnishing relief to a pauper resident of another county cannot recover of the other county for any relief furnished prior to the giving of the required notice. It appears that all the relief furnished said pauper for which this action was brought was so furnished prior to the presentation of said bill to the board of county commissioners of Eureka county. If said bill was sufficient in form and substance to meet the requirements of said section 8 with respect to the written notice to be given, the delay in giving it rendered it worthless.

As to the letter, or notice, or communication to which O. H. Perry testified, we fail to find any evidence tending to show that it was written, given, or communicated by the board of commissioners, or by their authority, or that they acquired any knowledge thereof until nearly six years after the said county clerk prepared and mailed the same.

We fail to find any evidence tending to show that said letter, notice, or communication purported to be from, or by the authority of, the board of county commissioners of Washoe county; but the evidence tends to show that it appeared upon its face that it was from O. H. Perry, county clerk of Washoe county, and that it emanated from him in his official capacity as such county clerk. The statute does not require or authorize the notice mentioned in said section 8 to be given by the county clerk.

We think it is essential to the validity of such notice that it shall emanate from the board of county commissioners, and that it shall tend to show that it is from that official body.

The statute provides that "said notice shall be in writing,

and attested by the clerk of the board of county commissioners." There is no evidence tending to show that said letter, or so-called "notice," was so attested. The county clerk of the respective counties is ex officio clerk of the board of county commissioners of his county. But it is well settled that making a person an ex officio officer by virtue of his holding another office does not merge the two into one. (7 Am. & Eng. Enc. Law, 487, note 7; *State* v. *Laughton*, 19 Nev. 205, and cases there cited.)

In *Denver* v. *Hobart*, 10 Nev. 31—Denver being then lieutenant-governor and ex officio warden of the state prison—it was held that the two offices were as distinct as though held by different persons; that the duties and obligations of the one are entirely independent of the duties and obligations of the other.

And so it may be said with respect to the offices of county clerk and clerk of the board of county commissioners. An attestation by the county clerk, simply as such clerk, is not such an attestation by the clerk of the board of county commissioners as said statute requires. Even if the notice was sufficient in all other respects, it was not given as the statute provides. Counsel contend that, said notice having been placed in an envelope, properly stamped, deposited in the postoffice, and addressed to the clerk of the board of county commissioners of Eureka county, that that was sufficient.

But we cannot agree with counsel in that contention. If the body of the letter be regarded as sufficient in substance to constitute the required notice, yet it might as well have been deposited in the waste basket as in the postoffice, in the absence of proof that it was received by the board of county commissioners. The statute in this case required the notice to be deposited in the postoffice, and addressed to the board of county commissioners of Eureka county. It was not so addressed, and no presumption can be indulged that said board received it.

The plaintiff is not entitled to the benefit of any presumption against the defendant with respect to the required notice until it shows that the provisions of the statute relating thereto were strictly complied with on the part of its proper officers.

The statute relating to the support of the poor plainly defines the powers vested in and the duties imposed upon the boards of county commissioners of the several counties, and the counties' liability in regard to the support of the poor.

If reasonable attention is given to the statute, there can be no serious difficulty encountered in complying with its directions. The failure to give the statutory notice is fatal to the plaintiff's case. The notice relied upon by the plaintiff was fatally defective in the particulars above given.

The judgment and order from which this appeal is taken are affirmed.