[No. 689.]

FRANK DENVER, RELATOR, *v.* W. W. HOBART, STATE CONTROLLER, RESPONDENT.

MANDAMUS—TITLE TO AN OFFICE.—Mandamus is not the proper remedy to try the title to a public office.

CONSTITUTIONAL LAW—LEGISLATIVE POWER.—The legislature, having vested certain duties upon a public officer, and allowed him a salary for his services, may take those duties and the salary away from him before the expiration of his term of office, and confer them upon another.

STATUTES—ELECTION OF WARDEN OF STATE PRISON.—The act of March 7, 1873 (Stat. 1873, 181), providing for the government of the State prison: *Held*, to be valid in so far as it provides for the election of a warden by the board of State prison commissioners.

IDEM—SALARY OF WARDEN.—The legislature did not intend by section 23 of the act of March 7, 1873, to give relator a salary as lieutenant-governor, and also a salary as *ex officio* warden.

THIS was an original application to the Supreme Court for a writ of mandamus.

The facts are stated in the opinion.

*Thomas Wells and T. W. W. Davies,* for Relator.

*L. A. Buckner, Attorney-General, and W. W. Hobart, in propria persona,* for Respondent.

By the Court, HAWLEY, J.:

This is an application for a writ of mandamus to compel respondent to issue to relator a warrant on the State treasurer for the sum of five thousand three hundred and ninety-seven dollars and sixty-five cents claimed to be due relator for his salary as *ex officio* warden of the State prison.

The legislature, at its last session, passed "An act to provide for the government of the State prison of the State of Nevada" (Stat. 1873, 71), which provides that "the State prison commissioners shall meet on the first Monday of April, A. D. 1873, for the purpose of selecting a warden of the State prison. * * * The warden, so selected, shall receive a salary not to exceed three thousand dollars per annum." (Sec. 4.)

"An act entitled 'An act to provide for the government of the State prison of the State of Nevada,' approved March 4, 1865, '* * * and all acts and parts of acts in conflict with the provisions of this act, are hereby repealed; *provided,* nothing in this act contained shall be so construed as to in any manner interfere with, or deprive the present *ex officio* warden of the compensation as named in section twenty-five of the act hereby repealed, during the term for which he has been elected lieutenant-governor of this State. And the sum of eight thousand ($8000) dollars is hereby appropriated out of any money coming into the general fund, not otherwise appropriated, for the payment of the salary of the lieutenant-governor, for house rent, furniture, and the necessary provisions for his table; and the controller is hereby authorized and directed to draw his warrant in favor of the said lieutenant-governor for the said amount at the same time and in the same manner as warrants are drawn in favor of all other State officers, and the State treasurer is hereby directed to pay the same." (Sec. 23.)

Relator, by virtue of his office as lieutenant-governor, was, at the time of the passage of said act, *ex officio* warden of the State prison. The answer of respondent shows that the State prison commissioners, in pursuance of the provisions of said act, met and appointed P. C. Hyman warden. On the 17th day of March, A. D. 1873, relator was forcibly ejected from the State prison, and, by the action of the board of State prison commissioners, prevented from the discharge of further duties as *ex officio* warden.

While admitting that the office of *ex officio* warden, having been created by law, might be abolished by law without any regard to his term of office as lieutenant-governor, or his salary as warden, relator claims: First. That he was illegally removed because the office was not abolished by said act of 1873, nor himself impeached for malfeasance or misfeasance in office. Second. That if mistaken upon this view of the law, that he is nevertheless entitled to a warrant as prayed for upon the express language of the first clause of the proviso contained in section twenty-three, and that, in addition to his salary as *ex officio* warden, he is entitled, under the second clause, to the further sum of eight thousand dollars for his salary as lieutenant-governor.

It was admitted upon the hearing that relator had quarterly received his warrants from respondent in the sum of one thousand dollars for his "salary as lieutenant-governor," and that the same had been paid by the State treasurer. If relator relied solely upon his first proposition, he has mistaken his remedy. It would be necessary for him to institute proceedings in the nature of a writ of *quo warranto* in order to establish his right to the office. (*State ex rel. Jackson* v. *Mosely,* 34 Mo. 375; *State ex rel. Jackson* v. *Thompson,* 36 Mo. 70; *Bonner* v. *The State,* 7 Ga. 473; *People ex rel. Smith* v. *Olds,* 3 Cal. 167.)

But waiving this irregularity we think the act of 1873, in so far as it provides for the election of a warden by the State prison commissioners, is valid. The legislature having by the act of March 4, 1865, vested certain duties upon the lieutenant-governor, and allowed him a salary for his serv-

ices, it was within the power of the legislature to take those duties and the salary away from him before the expiration of his term of office, and confer them upon another. (*Connor* v. *The Mayor, etc., of New York*, 5 N. Y. 294; *Attorney-General* v. *Squires*, 14 Cal. 13.) The offices of lieutenant-governor and warden of the State prison were as distinct as though filled by different persons. The duties and obligations of the one are entirely independent of the duties and obligations of the other. So far as the office of *ex officio* warden existed in relator, it was an office created by legislative act. The legislature might at any time direct how it should be filled, what compensation should be allowed, and provide the manner in which its duties should be discharged. In such cases, the length of the term of office is regulated by considerations which affect the public interest, without any regard to the interests of the office-holder.

Did the legislature intend, by the act of 1873, to give relator a salary as lieutenant-governor, and also a salary as *ex officio* warden of the State prison?

Section 25 of the act approved March 4, 1865, referred to in section 23 of the act approved March 7, 1873, fixed the compensation of the warden at two thousand four hundred dollars per annum, "to be paid monthly out of the State prison fund." This section was superseded by the act approved March 3, 1866. "The salary of the lieutenant-governor shall be three thousand dollars, payable monthly, as compensation as warden of the State prison." (Stat. 1866, 205, Sec. 1.) Section 7 of the act of 1865 was amended in 1867. The amended act provides that, "The warden shall reside at the prison buildings, and shall be provided by the State with apartments suitably furnished." And it is made the duty of the board of State prison commissioners to furnish him with the "necessary provisions for his own table." (Stat. 1867, 123.)

It must be admitted that the proviso in section 23 of the act of 1873 is peculiarly worded and carelessly drawn. The reference to section 25 of the act of 1865 is evidently a mistake. The second clause is incomplete. The act of 1873,

and all the acts thereby repealed, relate exclusively to the management of the State prison and the duties pertaining to the office of *ex officio* warden, and are entirely independent of the laws which relate to the office and duties of the lieutenant-governor. The acts refer to and mention the lieutenant-governor only as *descriptio personœ* of the *ex officio* warden.

When all the acts are considered together it seems to us conclusive that it was the intention of the legislature, by the act of 1873, to relieve the relator from the responsibilities and duties of the office of warden, deprive him of its honors, and allow him to receive a sum of money which the legislature deemed equivalent to the compensation he would have received as *ex officio* warden during his term of office as lieutenant-governor if no change had been made.

The appropriation of the sum of eight thousand dollars was to be in lieu of his salary and "apartments suitably furnished," including also "the necessary provisions for his own table." This clause must be construed the same as if the words, *as such ex officio warden,* were inserted after the words "lieutenant-governor." Any other construction would be absurd.

The relator has received the salary allowed him by the act under consideration. His application is devoid of merit.

The writ is denied.