[No. 1221.]

THE STATE OF NEVADA EX REL. W. H. DAVENPORT, ATTORNEY GENERAL, RELATOR, *v.* CHAS. E. LAUGHTON, RESPONDENT.

QUO WARRANTO—LIEUTENANT-GOVERNOR—EX OFFICIO STATE LIBRARIAN—OFFICIAL BOND—WITHDRAWAL OF SURETY—FAILURE TO FILE NEW BOND—OFFICE VACANT.—Respondent was elected to the office of lieutenant-governor; subsequently the legislature passed an act making the lieutenant-governor *ex officio* state librarian; respondent as *ex officio* state librarian gave a bond; one of the sureties thereon, thereafter, withdrew from said bond by giving a notice in compliance with the statute; respondent failed to file a new bond within the time required by the statute, and the governor declared the *ex officio* office of state librarian vacant: *Held,* that the failure to give the bond as *ex officio* state librarian did not create a vacancy in the office of lieutenant-governor, that the two offices are separate and distinct, and that respondent's failure to give a new bond as *ex officio* state librarian created a vacancy in that office.

IDEM — SUFFICIENCY OF NOTICE BY SURETY. — The notice served by the surety upon respondent was as follows: "Hon. Chas. E. Laughton. * * * You are hereby notified that I, as surety for the sum of * * * upon your official bond as *ex officio* state librarian, * * * desire to be released from further liability on account thereof, and to withdraw and be discharged from said bond"; *Held,* sufficient in form and substance.

APPLICATION for *quo warranto.*

The facts are sufficiently stated in the opinion.

*W. H. Davenport,* Attorney General, and *R. M. Clarke,* for Relator:

I. Respondent cannot keep the office of *ex officio* state librarian and neglect to give a bond. (*Hinze* v. *People,* 92 Ills. 406; *Attorney General* v. *Squires,* 14 Cal. 12.)

II. The failure of an officer to give a bond, required by statute, creates a vacancy in office which may be filled by appointment. (2 Comp. Laws, 2633, 2931; *People* v. *Taylor,* 57 Cal. 620; *State* v. *Beard,* 34 La. Ann. 273; *State* v. *Matheney,* 7 Kan. 330; *State* v. *Hadley,* 27 Ind. 496; *Hyde* v. *State,* 52 Miss. 665; *Beebe* v. *Robinson,* 52 Ala. 66.)

III. A vacancy in office may exist without any judicial determination of the fact. (2 Comp. Laws, 2633, 2931; *Hedley* v. *Commissioners,* 4 Blackf. 116; *Kerr* v. *Jones,* 19 Ind. 354;

*Thompson* v. *Holt*, 52 Ala. 504; *Park* v. *Bamberger*, 52 Miss. 565; *Bashford* v. *Barstow*, 4 Wis. 777.)

IV. If it is true as claimed by respondent that whoever is the lieutenant-governor must be *ex officio* state librarian, then it follows that respondent has forfeited and vacated the office of lieutenant-governor by failing to give a new bond as *ex officio* state librarian. (*People* v. *Sanderson*, 30 Cal. 160.)

*A. C. Ellis*, for Respondent:

I. The court has no jurisdiction to inquire into the matters set forth in the petition, and cannot render any judgment of ouster against the lieutenant-governor. (Const., art. V., sec. 17; 2 Comp. L. 2635, 8636; *Low* v. *Com.*, 3 Met. (Ky.) 237; *Page* v. *Hardin*, 8 B. Mon. 648.)

II. The tenure of a constitutional office cannot be made dependent upon the will of the legislature, and the lieutenant-governor cannot be ousted upon a condition imposed after his election and qualification. (Const., art. V., sec. 22; Id., art. XV., sec. 11; *Fant* v. *Gibbs*, 54 Miss. 396; *King* v. *Hunter*, 65 N. C. 603;[1] *Howard* v. *State*, 10 Ind. 99; *People* v. *Kelsey*, 34 Cal. 470.)

III. The notice served upon respondent is insufficient. There is no statutory statement. (2 Comp. L. 2921, 2930–1; *Potwine's Appeal*, 31 Conn. 381; *Williams* v. *Brummel*, 4 Ark. 129.)

IV. The act of 1883 is the last-act of the legislature in relation to official bonds; the act of 1867, being repugnant to it, is repealed by it. (*Christy* v. *Supervisors*, 39 Cal. 3; *Estate of Wixom*, 35 Id. 320; *Ex parte Smith*, 40 Id. 419; *People* v. *Burt*, 43 Id. 560; *People* v. *Sargent*, 44 Id. 430.)

By the Court, LEONARD, J.:

This is a proceeding to determine the right of respondent (1) to hold the office of lieutenant-governor; and (2) to hold the office of state librarian. At the general election for state officers in November, 1882, respondent was elected lieutenant-governor. He afterwards qualified according to law, and entered upon the duties of said office on the first Monday in January, 1883. On the seventeenth of February, 1883, an act was passed, to take effect March 2, 1883, which provides,

1   6 Am. Rep. 754.

among other things, that the lieutenant-governor shall be *ex officio* state librarian. (Stat. 1883, 41.) On the first of March, 1883, an act was passed, to take effect immediately, which provides that "before entering upon the duties, of the office (state librarian) the lieutenant-governor, as *ex officio* state librarian, shall execute an official bond in the sum of one thousand dollars, with sureties to be approved by the governor, conditioned for the faithful discharge of his duties and delivery over to his successor of all the books and other property belonging to the state library. * * * " Respondent gave the required bond, with J. R. King and D. L. Bliss as sureties, each in the sum of one thousand dollars, and entered upon the discharge of the duties of state librarian.

Section 2633 of the Compiled Laws provides that "every office shall become vacant upon the occurring of either of the following events, before the expiration of the term of such office: * * * *Fifth.* A refusal or neglect of the person elected or appointed to take the oath of office as prescribed in section twenty-two of this act, or when a bond is required by law, his refusal or neglect to give such bond within the time prescribed by law. * * * " By sections 2929, 2930, 2931, it is provided that "any surety on the official bond of any state * * * officer, or on the bond or undertaking of any person, where, by a law, a bond or undertaking is required, may be released from any liability thereon accruing from and after proper proceedings had therefor as provided in this act." "Any surety desiring to be released from liability on the bond of any state officer shall file with the governor or secretary of state a statement in writing, duly subscribed by himself, or some one in his behalf, setting forth the name and office of the person for whom he is surety, the amount for which he is liable as such, and his desire to be released on account thereof. A notice containing the objects of such statement shall be served personally on the officer." * * * "If any officer * * * shall fail, within ten days from the date of a personal service * * * to file a new or additional bond or undertaking, the office or appointment of the person or officer so failing shall become vacant; and such officer or person shall forfeit his office or appointment, and the same shall be filled as in other cases of vacancy, and in manner as provided by law, and the person applying to be released from liability on such bond or under-

taking shall not be holden or liable thereon after the date herein provided for the vacating and forfeiting of such office or appointment."

On July 31, 1881, D. L. Bliss, one of the sureties named, filed in the office of the governor and of the secretary of state the following document in writing:—

"CARSON CITY, July 31, 1885.

"*Hon. Chas. E. Laughton, Carson, Nevada*—SIR: You are hereby notified that I, as surety for the sum of one thousand dollars ($1,000) upon your official bond as *ex officio* state librarian of the state of Nevada, desire to be released from further liability on account thereof, and to withdraw and be discharged from said bond.                    D. L. BLISS."

It is claimed by plaintiff that an exact copy of this paper was served personally on respondent, at his office in Carson, July 31, 1885. Respondent denies the service. Its validity will be considered further on. Respondent has not filed a new or additional bond. On September 4, 1885, the governor filed in the office of secretary of state his written proclamation declaring the office of state librarian vacant.

1. There is no vacancy in the office of lieutenant-governor by reason of respondent's failure to file a new or additional bond. It is claimed and conceded by both sides that the office of lieutenant-governor and the office of state librarian are separate and distinct. Making a person an *ex officio* officer, by virtue of his holding another office, does not merge the two into one. (*People* v. *Edwards*, 9 Cal. 286; *People* v. *Love*, 25 Cal. 520; *Lathrop* v. *Brittain*, 30 Cal. 680; *People* v. *Ross*, 38 Cal. 76; *Territory* v. *Ritter*, 1 Wyo. 333; *Denver* v. *Hobart*, 10 Nev. 31.) It is true, the lieutenant-governor is required to give the bond, because the lieutenant-governor and librarian are one person; but he gives it for the *ex officio* office, not the principal one. The sureties are not, and were not intended to be, liable for any malfeasance outside of the *ex officio* office. We cannot say in this proceeding that respondent's right to hold the office of lieutenant-governor, and enjoy the emoluments thereof, depends upon a faithful discharge of the duties of state librarian, or upon his compliance with the statute concerning the bond required of him as librarian. We cannot pronounce the office of lieutenant-governor vacant, unless respondent has done something, or failed to do something,

which the law declares shall produce a vacancy therein. The fault here charged is failure to give the bond required as state librarian. For that fault, if it exists, the only penalty that can follow in this proceeding is, at most, to declare that the office in which the bond is required was, by such failure, vacated and forfeited.

2. Did the office of state librarian become vacant in law, by reason of a failure on the part of respondent to file a new or additional bond within the time prescribed, after the filing by D. L. Bliss, in the office of the governor or secretary of state, of a legal statement, and after personal service of a legal notice? There is nothing in the constitution of this state prohibiting respondent from holding the office of lieutenant-governor and the office of state librarian. (*Crossman* v. *Nightingill,* 1 Nev. 326.) Such being the case, the legislature had power to create the last-named office, and make the lieutenant-governor *ex officio* state librarian. If the legislature had the powers mentioned, it must follow that it had authority also to impose reasonable conditions precedent to the holding of the legislative office. It had power to require the giving of a bond to secure a faithful discharge of the duties of that office. It could provide that such bond should be kept good, and in case of failure to do so, that the office should become vacant. When the statute of February 17, 1883, making the lieutenant-governor *ex officio* state librarian, and the statute of March 1, 1883, requiring the lieutenant-governor, as *ex officio* state librarian, to give a bond, were passed, there were general statutes declaring under what circumstances all offices should become vacant, providing for the release from liability of any surety, and prescribing the result of a failure to file a new or additional bond within the time stated, after the filing by a surety of a legal statement in the office of the governor or secretary of state, and the service of a legal notice upon the officer.

These different statutes must be construed together, and in such a manner, if possible, as to carry out the legislative intent. When the statute requiring the lieutenant-governor, as *ex officio* state librarian, to give a bond was passed, it was the law of this state that any or all of respondent's sureties might be relieved from liability by doing certain things, and that a failure of respondent to file a new or additional bond would render the office of state librarian vacant. The legislature knew the law,

and with such knowledge required the bond. In view of the then existing law, can it be said that the legislature intended to say respondent might give a bond or not, according to his caprice or whim? Were they acting a legislative farce when they provided that he should secure the state in the faithful discharge of the duties of this most important office? We have no right to think so, and in our opinion the natural construction of the different statutes referred to will not only relieve the legislature of a farcical intent, but it will also render operative and beneficial all the statutes touching the subject in hand.

Sections 2633, 2929, 2930, and 2931 are not repugnant to section 5 of the act of March 1, 1883. It is said to be so because the last-named law declares that the lieutenant-governor shall be *ex officio* state librarian *at all events*, and permits no other person to fill the office or perform its duties; and consequently it is claimed that the requirement of a bond is a mere directory provision, which may be disregarded with impunity by respondent, except so far as he might be amenable to the criminal laws of the state. It is true, the legislature declared that the lieutenant-governor should be *ex officio* state librarian; but it was also declared that, before entering upon the duties of the office, the lieutenant-governor, as *ex officio* state librarian, should execute a bond. The first provision was intended to be dependent upon the last. It was not intended that the lieutenant-governor should hold the *ex officio* office without giving and keeping good his bond. Suppose the legislature had created the office of state librarian, and declared that a certain person named in the statute should hold the office until the next general election, but had provided that he should execute an official bond, with sureties, before entering upon the duties of the office, can it be doubted that in such case the person named would have been obliged to file his bond and keep it good, and that in case of failure to do so there would have been a vacancy, which, under section 8 of article V. of the constitution, it would have been the governor's duty to fill? We think not, and yet it would have been as true in that case that the person named was intended to be state librarian *at all events* as it is now that the lieutenant-governor shall be.

In 1869, "An act to create the county of White Pine, and

provide for its organization," was passed by the legislature. It provided, among other things, that certain named persons should be the officers of the county until the next general election. M. W. Kales was made county treasurer. By the act itself no bonds were required. (Stat. 1869, 108.) But by the general law relating to county treasurers, each county treasurer, before entering upon the duties of his office, was required to take an official oath and give a bond. The same was true of other officers. Unquestionably their tenure of office depended upon a compliance with the general law governing qualification, and yet the act creating the county declared that they should be the county officers until the next general election. If the treasurer had said, " I will hold my office without taking any oath or filing any bond, because the latest statute upon the subject declares that I shall be treasurer *at all events*, and permits no other person to fill the office or perform its duties," he would have found out his error.

The case of *People* v. *Sanderson*, 30 Cal. 160, is cited as authority in support of the claim that there is no vacancy in the office of state librarian, even conceding that the statement filed, and the notice, together with the service thereof upon respondent, were sufficient in law. We quote from the opinion: " The next question is, Was there a vacancy in the board of trustees of the state library to be filled at the time of the appointment of the relator by the governor? The act provides that the state library shall be under the direction and control of a board of trustees, to consist of five members, as therein provided. It next provides that the governor and the chief justice of the supreme court shall be *ex officio* members of the board. This designation is not of an individual or individuals by name, but of certain officers who, by reason of their character as officers, are declared by the act to be members of the board. The appellant in this case could not, under the act, hold the position of trustee except in his character of chief justice of the supreme court. As a trustee he has no power to resign, unless he resigns the office on which it depends. There can be no vacancy of the place in the board of trustees so long as there is a chief justice, and no person other than that functionary can fill it, because the statute makes no provision for an incumbent of the place designed to be occupied in the board by the chief justice, other than the person who may for the time be invested with

the superior office.   The relator cannot fill the place intended by the act to be filled by the chief justice as such, because he does not possess the official character which is essentially a condition precedent to his capacity and power to hold the place alleged on his part to have been vacant, by constitutional consequence, when he was appointed to it by the governor.   The legislature by the act evidently intended that the board of trustees should consist of five members, and it is quite as evident that it was intended one of them should be the chief justice of the supreme court, and no other person; but as the chief justice was, at the time, and from thence hitherto has been, constitutionally incompetent to perform the duties of trustee, the act, as to him, and the place to be filled by him, was and is inoperative and void.   The conclusion to which we have come on this point is, that there was no place in the board of trustees to be filled at the time relator was appointed, as set forth in the information, and that the appointment of the relator trustee was without authority, and void."

We cannot agree with many of the conclusions expressed above.   In our opinion, under the statutes of California, similar to ours, there was a vacancy in the board, which it was the duty of the legislature, if in session, to fill; and if it was not in session, that duty devolved upon the governor.   It was decided by the court in that case, that the chief justice, by reason of his judicial position, could not, under the constitution, exercise the functions and duties of trustee of the state library.   In other words, it was in effect decided that one of the persons or officers named in the act who should constitute the board in part was incompetent.   The legislative appointment as to that officer was null.   It was as though it had not been made.   But that fact did not make the board consist of four instead of five.   It still remained true that the board should consist of five members.   Why disregard that provision of the statute, simply because, by reason of a mistaken idea of the constitution, the legislature had done a void act?   The statute of California (Wood's Dig., art. 2871) provided that "every office shall become vacant upon the happening of either of the following events, before the expiration of the term of such offices: * * * (8) The decision of a competent tribunal declaring the election or appointment void or the office vacant"; and the

second section of the statute creating the board provided that, "in case of a vacancy for any cause in the board of trustees, the legislature shall elect on joint ballot to fill such vacancy. If a vacancy occur when the legislature be not in session, the governor shall have power to fill such vacancy until the ensuing session of the legislature." It seems to us that when the supreme court, a competent tribunal, declared the appointment of the chief justice void for constitutional reasons, the board, still consisting of five members, was but four fifths full, and that as to the other fifth there was a vacancy, which could have been filled by the proper appointing power.

3. It is urged by counsel for respondent that the document filed with the governor and in the office of secretary of state, and the notice claimed to have been served personally upon respondent, were insufficient in law. It is undoubtedly true that, in order to be released from future liability, a surety must proceed, in substance, according to the requirements of section 2930, Comp. L. Did Mr. Bliss do so in this case? It is provided by section 2921, Comp. L., that official bonds of all state officers, except that of the secretary of state, shall be approved by the governor and filed in the office of secretary of state. Such were the requirements in relation to the bond in question. (Stat. 1883, 102, sec. 5.) Section 2930, Comp. L., provides that sureties desiring to be released from bonds of state officers shall file with the governor, who approved them, or with the secretary of state, in whose custody they are kept, "a statement in writing duly subscribed by himself, or some one in his behalf, setting forth the name and office of the person for whom he is surety, the amount for which he is liable as such, and his desire to be released from further liability on account thereof"; and "a notice containing the objects of such statement shall be served personally on the officer. * * *"

By sections 2929, 2930, and 2931, the legislature intended to accomplish three things: *First*, to enable an unwilling surety to absolve himself from future liability; *second*, to protect the state by giving it notice, through its proper officers, of the desire and intention of the surety to be released; and *third*, to give the officer time, after receiving notice, to make good his bond, and thus escape the penalty of forfeiture. A compliance with the statute, sufficiently strict to accomplish the objects intended, should be required.

From the written document filed with the governor and secretary of state, it cannot be doubted that each of those officers were informed that Mr. Bliss was surety for respondent on his official bond as *ex officio* state librarian in the sum of one thousand dollars, and that he desired to be released from further liability on account thereof. Those facts, and no others, could be gathered from the paper.

It is said that the statute contemplates a statement and notice; two different papers, each performing a distinct office, differing in form and substance. That they *may* be different is true, but that they *must* be so is incorrect. If each contains all that is required to be put in both, neither becomes invalid, because something is inserted therein which might have been left out. A written statement is a series of facts or particulars expressed on paper. The one filed in this case is in the form of a notice addressed to respondent, but it is a statement still. It is a writing informing any one who reads it of all the facts required by the statute to be inserted in a statement, and is sufficient to accomplish all the purposes intended. It is said that the notice should contain the substance of the statement, and also the time when and place where the statement was filed. This notice does contain the entire contents of the statement filed. It is a true copy of the statement. But it need not inform respondent of the time and place of filing—*first*, because the statute does not require it; and *second*, because such notification would be useless, and accomplish no useful end. Any officer must be presumed to know the law. He knows that a surety who wishes to be released from his bond must file a statement in one of two places, and serve a notice upon him. When he receives the notice, he may and should seek the proper depositary of the statement, and there ascertain its contents, if one has been filed, and if it has not, the notice goes for naught. If it has been filed, it is his duty to proceed according to law, and file a new bond. The "objects of the statement" must be inserted in the notice. In other words, the surety, by the notice, must inform the officer what induces him to take action in the premises—what he intends to accomplish. But he need not use the exact language of the statute, and say: "I have filed a statement in the office of the governor, and my *object* in so doing is to be released from your bond." It is enough if he states the objects without specifying them as such. It is plain

that the object of Mr. Bliss in making his statement, in all that he did, was to be released as surety. That object only is contained in the notice. We think the written notice is sufficient in form and substance.

4. But one other question remains for consideration: Was the notice served on respondent personally on July 31, 1885? After careful examination of all the evidence introduced in the case, including surrounding circumstances, we are satisfied that it was.

It follows from the foregoing that respondent is not entitled to hold and enjoy the office of state librarian of the state of Nevada, and as to that office, a judgment of ouster must be entered against him, with costs. It is so ordered.