[No. 1926]

## THE STATE OF NEVADA, ON THE RELATION OF JOE JOSEPHS, RELATOR, v. W. G. DOUGLASS, AS SECRETARY OF STATE OF THE STATE OF NEVADA, RESPONDENT.

1. CONSTITUTIONAL LAW—DETERMINATION OF CONSTITUTIONAL QUESTION—NECESSITY—VALIDITY OF STATUTES—PRESUMPTIONS.
   Courts will presume statutes to be valid and will not consider a question affecting their invalidity, unless essential to a determination of the case.

2. CLERKS OF COURT—NATURE OF OFFICE.
   The office of clerk of the supreme court is a constitutional office.

3. OFFICERS—ABOLITION OF OFFICE.
   The legislature, in the absence of special authorization in the constitution, may not abolish a constitutional office, or change, alter, or modify its constitutional powers and functions.

4. CLERKS OF COURT—ABOLITION OF OFFICE—STATUTES—CONSTITUTIONALITY.
   Const. art. 4, sec. 32, providing that the legislature shall provide for the election by the people of a clerk of the supreme court, etc., provides, as amended in 1889, that the legislature shall have power to increase, diminish, consolidate, or abolish the following county officers: County clerks, county recorders, etc. *Held*, that by expressly designating certain offices which might be consolidated, the constitution intended to exclude all other offices, and hence the act of February 20, 1893 (Stats. 1893, p. 32, c. 35), providing that the secretary of state shall be ex officio clerk of the supreme court and ex officio state librarian, while sufficient to confer color of authority on the secretary of state acting ex officio clerk of the supreme court, it is without force as an amendment or repeal, by implication, of the statute (Comp. Laws, 1782, 1790, and 1793), providing for the election of a clerk of the supreme court in the manner other state officers are elected.

ORIGINAL PROCEEDING. *Mandamus* by the State on the relation of Joe Josephs against W. G. Douglass, as Secretary of State of the State of Nevada. **Writ granted.**

The facts sufficiently appear in the opinion.

*Wm. Woodburn* and *James R. Judge*, for Relator:

I. Relator contends that the office of clerk of the supreme court, as created by the constitution of this state, is an elective office, the incumbent to be elected at

the same time and in the same manner as other state officers are elected.

The constitution of Nevada, art. 17, sec. 18, provides as follows:

"SEC. 18.   The governor, lieutenant-governor, secretary of state, state treasurer, state controller, attorney-general, clerk of the supreme court and superintendent of public instruction to be elected at the first election under this constitution shall each qualify and enter upon the duties of their respective offices on the first Monday of December succeeding their election, and shall continue until the first Tuesday after the first Monday of January, 1867, and until after the election and qualification of their successors respectively."

"SEC. 20.   All officers of state first elected under this constitution shall be commissioned by the governor of the territory."

"SEC. 8.   That the term of state officers except judicial, elected at the first election under this constitution, shall continue until the Tuesday after the first Monday of January, 1867, and until the election of their successors."

Art. 15, sec. 10, provides:

"SEC. 10.   All officers whose election or appointment is not otherwise provided for shall be chosen or appointed as may be prescribed by law."   (*State* v. *LaGrave,* 23 Nev. 373.)

II.   The powers of the government of the State of Nevada are by sec. 1 of art. 3 of the constitution "divided into three departments: The legislative, the executive and the judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any of the functions appertaining to either of the others, except in the cases herein expressly directed or permitted."

The office of clerk of the supreme court being a constitutional office belongs to and is an essential part of the judicial department of the state government.   Sec. 8 of art. 15 of the constitution of Nevada provides: "The legislature shall provide for the speedy publication of all stat-

ute laws of a general nature, and such decisions, * * *
*provided,* that no judgment of the supreme court shall
take effect and be operative until the opinion of the
supreme court in such case shall be filed with the clerk
of said court." Under the language of the constitution
above quoted it is not within the power of the legislature
to impose upon the secretary of state, nor of any other
member of the executive department of the state govern-
ment named in the constitution, any of the duties or func-
tions of clerk of the supreme court. (*People* v. *Provenes,*
34 Cal. 535; *Staude* v. *Commissioners,* 61 Cal. 396; *Sawyer*
v. *Dooley,* 21 Nev. 396; *Mayer* v. *State,* 15 Md. 376, 455;
Story, Const., sec. 525; *Reson* v. *Parr,* 24 Ark. 161, 87
Am. Dec. 52; *Butler* v. *State,* 97 Ind. 373.)

III.   The judicial department cannot consent that its
province shall be invaded by either of the other depart-
ments of the government. (*Allison* v. *Louisville R. Co.,* 9
Bush, 247.)

IV.   An office created by a constitution cannot be
enlarged or restricted in its scope by a statute or filled
in any other manner than that prescribed by the consti-
tution. (*People* v. *Bollam,* 182 Ill. 528; *State* v. *Cornell,*
60 Neb. 276; *Opinion of Justices,* 117 Mass. 603; *Speed* v.
*Crawford,* 3 Metc. (Ky.) 207; *People* v. *Raymond,* 37 N. Y.
428; *People* v. *Albertson,* 55 N. Y. 50, 43 Am. Dec. 740;
*Kilbourn* v. *Thompson,* 103 U. S. 190–1; *State* v. *Buchanan,*
24 W. Va. 362.)

*R. C. Stoddard,* Attorney-General, and *L. B. Fowler,*
Deputy Attorney-General, for Respondent.

By the Court, NORCROSS, C. J.:

This is an original proceeding in *mandamus,* brought
by the relator to require the respondent to file his nomi-
nation papers and affidavit as a candidate for the Demo-
cratic party nomination for the office of clerk of the
supreme court, to be voted for at the primary election to
be held on the 6th day of September, 1910. The relator's
petition alleges the necessary facts to entitle him, as

matter of right, to have his nomination papers and affidavit filed and to have his name certified as a candidate for such nomination, providing such office is to be filled by election. The respondent has filed a general demurrer to the petition, and the proceeding has been submitted upon the petition and the demurrer thereto.

By an act of the legislature entitled "An act to consolidate certain state offices in the State of Nevada," approved February 20, 1893, it is provided: "SECTION 1. The secretary of state shall be ex officio clerk of the supreme court and ex officio state librarian. * * *" (Stats. 1893, p. 32, c. 35.)

It is the contention of relator that in so far as said act attempts to consolidate or combine the offices of secretary of state and clerk of the supreme court, it is beyond the power of the legislature and, hence, violative of the constitution; that said act cannot and does not have the force of an amendment or repeal of the law existing at the time of its enactment, providing for the election of a clerk of the supreme court as other state officers are elected (Comp. Laws, 1782, 1790, 1793), which provisions of the statute, so far as the question in controversy is concerned, are unaffected by other subsequent legislation. If the relator is right in this contention, the writ prayed for should issue, otherwise not.

Section 32 of article 4 of the state constitution, as originally adopted, reads as follows: "The legislature shall provide for the election, by the people, of a clerk of the supreme court, county clerks, county recorders, who shall be ex officio county auditors, district attorneys, sheriffs, county surveyors, public administrators, and other necessary officers, and fix, by law, their duties and compensation. County clerks shall be ex officio clerks of the courts of record, and of the boards of county commissioners in and for their respective counties." This section of the constitution, as amended in 1889, now reads: "The legislature shall have power to increase, diminish, consolidate or abolish the following county officers: County clerks, county recorders, auditors, sheriffs, dis-

trict attorneys, county surveyors, public administrators and superintendents of schools. The legislature shall provide for their election by the people, and fix by law their duties and compensation. County clerks shall be ex officio clerks of the courts of record and of the boards of county commissioners in and for their respective counties." (Comp. Laws, 86.)

In considering the question presented by counsel in the briefs and in the oral argument, it will be well to advert first to the questions presented and determined in the decision of this court in the case of *State ex rel. Howell* v. *LaGrave*, 23 Nev. 373, in which case the act now in question was also involved. Howell was then the secretary of state and, by virtue of said act, was the clerk of the supreme court, at least *de facto*. By the provisions of an act to provide for the publication and distribution of the Nevada Reports (Stats. 1883, p. 78; Comp. Laws, 2599, *et seq.*), the clerk of the supreme court was ex officio reporter of decisions, and for the duties imposed on the clerk as such reporter, he was allowed a salary or compensation of $600 per year. It was to compel the state controller to issue to him warrants for such salary or compensation as reporter of decisions, that proceedings in *mandamus* were instituted by Howell. It was the contention of the attorney-general for the respondent in that case that, as the salary of the secretary of state was fixed by statute at $2,400 per annum, he could not be paid any additional compensation, and to do so would be in violation of section 9 of article 15 and of section 5 of article 17 of the constitution. Considering this contention, after citing a number of authorities, the court said: "Under the above authorities, the offices of secretary of state, of ex officio clerk of the supreme court, and the office of the reporter of the decisions of the supreme court are separate and distinct offices, and their being vested in the same person does not change their nature in this respect. If it was permissible under the constitution for the legislature to confer upon the secretary of state a separate and distinct

office charged with separate and distinct duties, in no way naturally pertaining to the duties of the secretary's office, and he performs these duties, we are of opinion that there is no provision of the constitution that prohibits the legislature from providing for paying him for said services. (*Love* v. *Baehr*, 47 Cal. 364.)"

In the opinion of the court on petition for a rehearing was considered the further contention of the attorney-general that by the amendment of section 32, article 14, of the constitution, *supra*, "the office of clerk of the supreme court, with all its attendant duties, ceased to be a constitutional office, and, without legislative creation then or thereafter, ceased to exist as an office; that the legislature has not attempted to create the office of clerk of the supreme court, or ex officio clerk of the supreme court, since said amendment to the constitution in 1889; that there is not now any warrant or authority of law for the existence of any such office or officer under the constitution or laws of this state." The court considered this contention at length and called attention to other constitutional provisions, especially those providing that no judgment of the supreme court should take effect and be operative until the opinion of the court in such case shall be filed with the clerk of said court (Const., sec. 8, art. 15); that the clerk of the supreme court shall keep his office at the seat of government (Const., sec. 12, art. 15), and said: "In obedience to the requirements of said original section 32, article 4, of the constitution, the said act of 1866 provided: 'SEC. 12. At the general election in the year 1866, and at the general election every four years thereafter, the clerk of the supreme court shall be chosen by the qualified electors of the state, and shall hold his office for the term of four years from the first Monday of January next after the election, and until his successor is qualified.' The fact that the provision of the original section 32 of article 4, concerning the clerk of the supreme court, was left out of said section as amended in 1889, in no manner affects the above

provisions of the statute, and in no degree affects the constitutional character of the office of clerk of the supreme court."

The question of the power of the legislature to consolidate, combine, or materially change or alter the conditions of constitutional offices, in the absence of specific constitutional authority so to do, was not presented, argued, or determined in the LaGrave case, *supra*, nor was such question essential to a determination of that case. Hence, that case is not conclusive of the question presented in this case. It would seem from a reading of the opinion in the LaGrave case, that the court in rendering its opinion may have intended to be particular that the opinion should not be regarded as conclusive of any question of legislative powers not presented or considered, for it said: "If it was permissible under the constitution for the legislature to confer upon the secretary of state a separate and distinct office charged with separate and distinct duties, * * * we are of opinion," etc. (See full quotation above.)

It not infrequently happens that statutes are involved in cases considered by appellate courts and the provisions thereof are construed and enforced; no question being raised as to their validity. Subsequently, when the same statutes are attacked, they may be, and often are, held to be void. It is a rule of almost universal application that courts will presume statutes to be valid and will not consider a question affecting their invalidity, unless essential to a determination of the case. Such necessity did not appear in the LaGrave case. The secretary of state, Mr. Howell, was performing the duties and exercising the functions of the office of clerk of the supreme court and of the ex officio office attached thereto, and was so recognized by the court and by the public. No one was contesting his right to hold the office, and, conceding the act to be unconstitutional, it was sufficient color of authority to constitute him a *de facto* officer and render his official acts valid. The same situation has prevailed since the decision in the LaGrave case and still prevails.

The LaGrave case is conclusive, however, upon one important point involved in the determination of this case, to wit: The office of clerk of the supreme court is a constitutional office.  This point is so thoroughly covered by the opinion in that case that further consideration of it is unnecessary.  This brings us to the question now presented for determination, Did the legislature have the power to combine or consolidate the offices of clerk of the supreme court and secretary of state, or impose the duties of the former upon the latter?  If these two offices may be combined, where is the prohibition in the constitution that any other two constitutional offices may not be combined, unless it be the provision requiring their election?  If the constitution were amended, merely striking out the provision providing for their election, would that mere fact give the legislature power to combine and consolidate them as it saw fit?

In speaking of the implied powers and duties of certain constitutional officers, the Supreme Court of California in *Love* v. *Baehr*, cited, *supra*, by this court in the LaGrave case, said: "It is admitted that the constitution contains no express limitation on the power of the legislature in this particular.  But we think a limitation is necessarily implied from the definition of the office.  From the earliest period of our history as a nation, almost every state in the Union had a secretary of state, controller, treasurer, and attorney-general; and the general nature of the duties pertaining to each were perfectly well known to the framers of the constitution.  It is clear beyond controversy that in establishing similar offices here, the framers of that instrument had reference to the same general class of duties, which was well known pertained to such offices elsewhere.  *  *  * It is not usual in state constitutions to define the particular duties of subordinate officers; that being the particular province of the legislature.  *  *  * In the performance of this duty, the legislature may rightfully exercise a wide discretion.  *  *  * In cases of doubt, it would be the duty of the courts, in deference to the

legislative authority, to solve the doubt in favor of the power exercised; and they ought to interfere only in a clear case, when the legislature has manifestly transcended its authority by imposing upon one of these offices duties which, in their nature, are wholly foreign to the office.  *  *  *  The business of counting money in the treasury, examining books of account,  *  *  * and the investment of public money in bonds, is wholly foreign to duties of an attorney, and is no more cognate to them than the management of a state prison or lunatic asylum.  The legislature has no more power to compel the attorney-general to perform such service as a part of the duties of his office than it has to compel the superintnndent of public instruction to take charge of the state prison, or to perform the duties of state gauger.  The attorney-general is, therefore, under no obligation to perform such services, and he may decline to perform them without any breach of his official duty as attorney-general.  If, however, he voluntarily performs them, he does not thereby enlarge the scope of his official duties as a constitutional officer.  By no compact between him and the legislature can his official duties as attorney-general be extended beyond the limits contemplated by the constitution.  *  *  *  If, however, he has performed a service which, under the constitution, is wholly foreign to his office, and which is not and cannot become a part of his official duty as. attorney-general, and if the legislature has seen fit to compensate him for this unofficial service, there is no constitutional impediment to hinder them from so doing."

In the case of *Melone* v. *State*, 51 Cal. 549, the case of *Love* v. *Baehr, supra,* was followed in the case of the secretary of state as ex officio a member of the state board of examiners.  In the case of *Green* v. *State*, same volume, page 577, the same rule was applied to the office of state controller.  See, also, *Lewis* v. *Colgan*, 115 Cal. 535, 47 Pac. 357; *State* v. *Weston*, 4 Neb. 234; *Cornell* v. *Irvine*, 56 Neb. 665, 77 N. W. 114; *State* v. *Roddle*, 12 S. D. 433, 81 N. W. 980; *Bradley* v. *Esmeralda Co.*, 32 Nev. 159.

It will be observed from a reading of the Baehr case, *supra*, that when a constitutional officer is by statute made ex officio another officer, the ex officio office is subordinate to the constitutional office to which he was elected, and that an exercise of the duties and functions of the ex officio office is not essential to the right of holding the principal office; but the converse is not the case. (*Denver* v. *Hobart*, 10 Nev. 28, 31; *State* v. *Laughton*, 19 Nev. 202, 205.)

This proposition is well illustrated by the opinion in the case of *State* v. *Laughton*, *supra*, in which this court said: "It is true, the lieutenant-governor is required to give the bond, because the lieutenant-governor and librarian are one person; but he gives it for the ex officio office, not the principal one. The sureties are not, and were not intended to be, liable for any malfeasance outside of the ex officio office. We cannot say in this proceeding that respondent's right to hold the office of lieutenant-governor, and enjoy the emoluments thereof, depends upon a faithful discharge of the duties of state librarian, or upon his compliance with the statute concerning the bond required of him as librarian. We cannot pronounce the office of lieutenant-governor vacant, unless respondent has done something, or failed to do something, which the law declares shall produce a vacancy therein. The fault here charged is failure to give the bond required as state librarian. For that fault, if it exists, the only penalty that can follow in this proceeding is, at most, to declare that the office in which the bond is required was, by such failure, vacated and forfeited."

Both the offices of secretary of state and clerk of the supreme court have existed as a part of the framework of every state in the Union, and the duties and functions are well known. While the duties of the office of clerk of the supreme court are ministerial in character, nevertheless the office is an essential part of one of the coordinate departments of the state government, and without such office that branch of the state government could not perform its functions. The office of secretary of

state holds an equally important position in the executive branch of government. It has been urged that as these two offices appertain to separate and distinct coordinate departments of the state government, it would be in violation of article 3 of the constitution to combine them, but as this contention is not clearly manifest, both offices being mainly ministerial in character, and as the question can be determined upon another view of the case, we give this point no consideration further than to observe that it emphasizes the fact that the two offices are distinct, and that the duties of one do not pertain to the duties of the other. As both of the offices are constitutional in character and both distinct in having duties which appertain to each, but which do not appertain to the other, the legislature is without power to compel either officer to perform the duties of the other. This point is brought out and sufficiently covered in the quotation from the case of *Love* v. *Baehr, supra.*

Every constitutional officer derives his power and authority from the constitution, the same as the legislature does, and the legislature, in the absence of express constitutional authority, is as powerless to add to a constitutional office duties foreign to that office, as it is to take away duties that naturally belong to it. The legislature may do as it sees fit with offices of its own creation; may consolidate or abolish them; or may enact a statute making an office of its own creation ex officio to some constitutional office. In the latter case, the constitutional officer may and usually does perform the duties of the ex officio office, but no power exists to compel him to so perform them, as a condition precedent to his holding the principal office. It is upon this theory that courts have universally held that for such additional ex officio duties, officers may receive an additional compensation or salary, although there be, as in the case of our own constitution, a provision that the salary of such constitutional officers may not be increased or diminished during the term for which they were elected.

It is well settled by the courts that the legislature, in

the absence of special authorization in the constitution, is without power to abolish a constitutional office or to change, alter, or modify its constitutional powers and functions. (*People* v. *Bollam,* 182 Ill. 528, 54 N. E. 1032; *Koch* v. *Mayor,* 152 N. Y. 72, 80, 46 N. E. 170; *Lloyd* v. *Smith,* 176 Pa. 213, 35 Atl. 199; *Massenburg* v. *Commissioners,* 96 Ga. 614, 23 S. E. 998; *Thomas* v. *Owens,* 4 Md. 189; *State* v. *McDaniel,* 19 S. C. 114; *Troy* v. *Wooten,* 32 N. C. 377; *State* v. *Covington,* 29 Ohio St. 102; *Ford* v. *Commissioners,* 81 Cal. 19, 22 Pac. 278; *In re Bulger,* 45 Cal. 553; *Love* v. *Baehr, supra; Denver* v. *Hobart,* 10 Nev. 28, 31; 29 Cyc. 1368; Cooley's Constitutional Limitations, 6th ed. pp. 78, 79.)

In *People* v. *Bollam, supra,* the court said: "It is a well-established rule of constitutional construction that when the constitution defines the circumstances under which a right may be exercised, the specification is an implied prohibition against the right of the legislature to add to the condition. * * * Section 24 of article 5 of the constitution of 1870 says that 'an office is a public position created by the constitution or law,' etc. The constitution thus recognizes two classes of officers, one which is created by the constitution itself, and the other which is created by statute. Where an office is created by statute, it is wholly within the control of the legislature creating it. But when an office is created by the constitution, it cannot be enlarged or lessened in scope by any statute, or be filled in any other manner than the manner directed by the constitution. (*People* v. *Loeffler,* 175 Ill. 585.)"

In *Denver* v. *Hobart, supra,* this court, by Hawley, J., said: "The offices of lieutenant-governor and warden of the state prison were as distinct as though filled by different persons. The duties and obligations of the one are entirely independent of the duties and obligations of the other. So far as the office of ex officio warden existed in the relator, it was an office created by legislative act. The legislature might at any time direct how it should be filled, what compensation should be allowed, and provide the manner in which its duties should be discharged. In

such cases the length of the term of office is regulated by considerations which affect the public interest, without any regard to the interests of the office-holder."

In the case of *State* v. *Rosenstock*, 11 Nev. 139, this court said: "The duties imposed upon them as city officers are of the same character as those which they are respectively required to perform as county officers, and there is no constitutional inhibition against the exercise of the duties of a municipal office by a person holding a county office, when the duties of each are of the same character."

Cyc., *supra*, says: "The authority of the government which possesses the power to create an office has, in the absence of some provision of law passed by a higher authority (that is, in the case of a municipal authority, some statutory or constitutional provision; in the case of the legislature, some constitutional provision), the implied power to abolish the office it has created, or to consolidate two or more offices it has created. But if an office has been provided for by the constitution, such an office may not be abolished by an act of the legislature."

By a reference to the provisions of section 32, article 4, of the constitution, as it read before its amendment, it will be observed that the only change made in its provision by the amendment was to eliminate all mention of the office of clerk of the supreme court, and to add the provision that the county officers mentioned in the section as originally enacted, could be, by the legislature, increased, diminished, consolidated, or abolished. The amendment also added the office of superintendent of schools to the list; otherwise there was no change in the offices originally designated.

If the legislature had power to consolidate or abolish county officers named in the constitution, there was no necessity for the amendment in so far as it affected such county officers. We think here was a clear recognition of the established legal principle, that in the absence of such constitutional authority, the legislature was without power to deal with such offices in the manner provided

in the amendment. In so far as the amendment affected the office of clerk of the supreme court, it only removed from the constitution the provision requiring his election, and left that subject in the power of the legislature to deal with. As having some possible bearing upon the application of the principle of law deemed controlling in this case, it is proper, we think, to mention the fact that, so far as we have been able to ascertain, no legislature of any state has ever before attempted to consolidate or combine two constitutional offices of the state government.

Again adverting to the provisions of section 32 of article 4 of the constitution as amended, we find it specially enumerates certain offices which may be consolidated or abolished, increased or diminished, and that all of the offices so named are county offices. We think the maxim "*Expressio unius est exclusio alterius*," clearly applicable, and that the constitution by specifically designating certain particular offices of a particular class which may be consolidated, etc., intended to exclude from such provisions all other constitutional offices. Broom, in his Legal Maxims, says that no maxim of the law is of more general and uniform application and is never more applicable than in the construction and interpretation of statutes. (19 Cyc. 23.) This maxim is alike applicable to the construction of constitutional provisions. (8 Cyc. 729; *Spier* v. *Baker*, 120 Cal. 376, 52 Pac. 659, 41 L. R. A. 196; *State* v. *Clark*, 21 Nev. 338.)

In *State* v. *Clark, supra*, this court said: "By the amendment of 1889, section 32 was changed so that the words 'other necessary officers,' no longer appear; but even as it originally stood, they apply only to officers similar to those previously enumerated in the section, and not to legislative officers, officers of the militia, and other officers belonging to different classes from those mentioned (Emd. Interp. Stat. 405, 409; *Edgecomb* v. *His Creditors*, 19 Nev. 149, 152)."

The legislature being without power to make one constitutional office subordinate to another, or to consolidate or combine one with the other, hence, while the act enti-

tled "An act to consolidate certain state offices in the State of Nevada," is sufficient to confer color of authority upon the secretary of state acting ex officio clerk of the supreme court, it is without force as an amendment or repeal, by implication of the provisions of the statute providing for the election of a clerk of the supreme court in the manner other state officers are elected.

The relator having offered for filing his nomination papers and tendered the requisite fee within the time allowed by law therefor, it is the duty of the respondent to file the same as of the day offered for filing, and to certify his name as a candidate for the Democratic nomination for the office of clerk of the supreme court, as candidates for other party nominations are certified.

The writ prayed for shall issue.