HUGH A. SHAMBERGER, DIRECTOR OF THE STATE DEPARTMENT OF CONSERVATION AND NATURAL RESOURCES, PETITIONER, v. LOUIS D. FERRARI, RESPONDENT.

No. 4048

August 6, 1957                                    314 P.2d 384

*Harvey Dickerson,* Attorney General, and *William N. Dunseath,* Chief Deputy Attorney General, of Carson City, for Petitioner.

*John E. Gabrielli,* of Reno, for Respondent.

## OPINION

By the Court, BADT, C. J.:

At the general election of November 1954 the voters ratified a constitutional amendment initiated in 1951[1] which removed the office of surveyor general from the "constitutional" officers required to be elected through statutory provisions to be enacted. At the same election they elected respondent as surveyor general for a four-year term ending December 31, 1958. The legislature of 1957 abolished the office of surveyor general and directed the surveyor general to turn over his files etc. to the newly created State Department of Conservation and Natural Resources. The act was to become effective July 1, 1957. Respondent, contending that the statute was unconstitutional, refused to comply and this proceeding in mandamus was brought to compel such compliance. We have concluded that the statute is in all respects valid and that the writ should issue.

1. Respondent's chief contention is that on the date

---

[1]Constitution, Art. XVI, Sec. 1. An amendment to the constitution, proposed by a majority of both houses of the legislature, referred to the next succeeding legislature and agreed to by a majority of that legislature, is thereafter submitted to a vote of the people, and if approved by a majority of the electors "such amendment or amendments shall become a part of the constitution".

of his election in November 1954, subsisting constitutional and statutory provisions provided for a term expiring December 31, 1958, and that no subsequent change of any constitutional or statutory provisions could alter or affect that situation. For the purposes of this opinion we deem it unnecessary to determine whether the constitutional change became effective at the date of the election under the provision quoted in footnote 1 or upon the canvassing of the vote by the justices of the supreme court on the first Wednesday of December following, NRS 296.420, that is, whether it became effective coincidently with respondent's election or prior or subsequently thereto.

At the time of the election there were in effect Art. V, Sec. 19 of the constitution providing that "[a] secretary of state, a treasurer, a controller, a surveyor-general, and an attorney-general, shall be elected at the same time and places, and in the same manner as the governor. The term of office of each shall be the same as is prescribed for the governor. * * *"; also Art. V, Sec. 22, again naming these officers and providing that they "shall perform such other duties as may be prescribed by law."; also Art. V, Sec. 2, fixing the term of governor for four years; also Art XV, Sec. 9, reading as follows: "The legislature may, at any time, provide by law for increasing or diminishing the salaries or compensation of any of the officers whose salaries or compensation is fixed in this constitution; provided, no such change of salary or compensation shall apply to any officer during the term for which he may have been elected."; also Art. IV, Sec. 32, reading in part as follows: "The legislature shall have power to increase, diminish, consolidate, or abolish the following county officers: County clerks, county recorders, auditors, sheriffs, district attorneys, county surveyors, public administrators, and superintendents of schools. The legislature shall provide for their election by the people, and fix by law their duties and compensation. * * *"; also NRS 281.010, providing: "The following officers shall be elected: * * * (m) A

surveyor general"; also NRS 229.010, defining qualifications for the office of surveyor general; also NRS 229.020, providing that the surveyor general shall be elected for a four-year term and shall hold until his successor shall qualify.

Under these constitutional and statutory provisions, existing at the time respondent was elected, it is argued by respondent that he was elected as a constitutional officer and not as a statutory officer; that the legislature may not change the character of that office from a constitutional to a statutory office during the term for which he was elected; that no change of salary or compensation could apply to him during such term; and that the attempt of the legislature in 1957 to abolish the office, a constitutional office at the time of respondent's election to it, could not be validly effective during his term. In support of this he relies largely upon language used in the dissenting opinion in State ex rel. Miller v. Lani, 55 Nev. 123, 27 P.2d 537. That case, however, had to do with Art. XV, Sec. 9, above referred to, prohibiting a change of salary of an officer during his term,[2] where such salary was fixed by the constitution. We are here concerned with the abolishment of the office, a distinction clearly recognized even in the dissenting opinion.[3] Respondent also relies upon Moore v. Humboldt County, 46 Nev. 220, 204 P. 880, 210 P. 401. That case, however, clearly recites the principle that while the legislature may not abolish constitutional offices, it is free to abolish offices which are the creatures of legislative enactment. The case held that the reduction of a constable's salary from $1,800 a year

[2] The majority opinion held that the proviso prohibiting a change of salary during the term referred only to the officers named in the preceding clause, namely, those whose salary "is fixed in this constitution".

[3] Referring to Moore v. Humboldt County, 46 Nev. 220, 204 P. 880, 210 P. 401, and State ex rel. Josephs v. Douglass, 33 Nev. 82, 83, 110 P. 177, the dissenting opinion notes: "But in those cases the court was dealing more with the power of the legislature to abolish an office than it was with its right to increase or diminish the salary of an officer during the term for which he may have been elected."

to $5 a year was an attempt to abolish the particular constableship of one county, contrary to the provisions of Art. IV, Sec. 25 of the constitution guaranteeing a uniform system of township government throughout the state. Respondent also relies upon State ex rel. Josephs v. Douglass, 33 Nev. 82, 110 P. 177, which had to do with an amendment of Sec. 32, Art. IV of the constitution. The main holding of that case was that, although a constitutional amendment deleted that portion of the section which required the election of a clerk of the supreme court, it did not deprive the office of its constitutional status because the constitution still was left with provisions having to do with important functions of that office, including the provision (Art. XV, Sec. 8) requiring the opinions of this court to be filed with the clerk. No such situation exists in the instant case.

State ex rel. Josephs v. Douglass, supra, State ex rel. Howell v. LaGrave, 23 Nev. 373, 48 P. 193, 674, King v. Board of Regents, 65 Nev. 533, 200 P.2d 221, and other decisions of this and other courts are cited by respondent in support of the general proposition that the legislature may not abolish a constitutional office. This is freely conceded by petitioner and the contention is, of course, correct. The present situation is, however, entirely different. In the first place the constitutional amendment initiated in 1951 and ratified by the electors in 1954 eliminated all constitutional references, wherever appearing, to the office of surveyor general. The amendment was in effect in 1957, at which time the legislature had before it its own prior legislative acts requiring the election of the surveyor general and other officers, defining their qualifications and fixing their salaries and terms of office. At that time the rule against statutory abolishment of a constitutional office had no bearing, significance or influence with reference to the legislative will concerning the office of surveyor general. It thereupon enacted, and the governor approved, Chapter 364, 1957 Statutes, entitled "An Act to amend Title

18 of NRS relating to the state executive department by creating a new chapter establishing the state department of conservation and natural resources; providing for the appointment, qualifications, compensation, powers and duties of the director of such department; providing for the creation of divisions within the department and the appointment and powers and duties of the executive heads of such divisions, and * * * to repeal chapter 229 of NRS relating to the surveyor general * * * to abolish the office of surveyor general and delete references thereto and to transfer the functions of the surveyor general, the state land register, the state forester fire warden and the state engineer to the state department of conservation and natural resources; * * *." The act is a comprehensive one, comprising eleven printed pages. Subsection 2 of section 16 directs as follows: "All personnel, records, papers, files, registers, property, equipment and funds of the surveyor general, the state land register, the state engineer, the state forester fire warden and the oil and gas conservation commission of Nevada shall be transferred to the state department of conservation and natural resources." It should be noted that prior to the amendment the state land register and the state forester fire warden were offices held by the surveyor general ex officio.

2.  This brings us to respondent's contention that, although by reason of the constitutional amendment the legislature was left free to act, such action could not affect respondent's status during the term for which he had been elected; that the constitutional amendment deleting the office of surveyor general as a constitutional office could operate only in futuro; that the legislative act of 1957 ordering the surveyor general, the state engineer and the oil and gas conservation commission to transfer their records, equipment etc. to the State Department of Conservation and Natural Resources gave retroactive effect to the constitutional amendment and that the amendment contained no language indicating that such

retroactive or retrospective effect was intended. We think it clear, however, that the constitutional amendment instanter left the legislature free to act with reference to the office of surveyor general. That office became forthwith a statutory and not a constitutional office. Respondent's contention would write into the amendment a proviso to the effect that the amendment would not be operative until the expiration of the surveyor general's present term of office. We have no authority to write such proviso into the amendment, nor can we say that such proviso is implied. As a statutory office the office of surveyor general was subject to abolishment forthwith by the legislature. Denver v. Hobart, 10 Nev. 28, State ex rel. Josephs v. Douglass, supra. It is uniformly held that the power to modify the nature or the duties of an office or to abolish it entirely or to consolidate it with another office is coincident with the legislative power to create the office in the first place. As expressed by the supreme court of Alabama in Tayloe v. Davis, 212 Ala. 282, 102 So. 433, 436, 40 A.L.R. 1052: "When, in the exigencies of government, it is necessary to create and define new duties, the legislative department has the discretion to determine whether additional offices shall be created, or these duties shall be attached to and become ex officio duties of existing offices. The power extends to the consolidation of offices resulting in abolishing one and attaching its powers and duties to another." The 1957 statutory abolishment of the office of surveyor general did not deprive respondent, despite his election in 1954 to a four-year term, of either a contractual right or a property right. He accepted the office charged with the understanding that the legislature could at any time, unless restricted by constitutional provisions, abolish it. See cases collected in 42 Am.Jur. 888, Public Officers, Sec. 11, and Id. 905, Sec. 33.

3. Respondent's next attack on the legislative act of 1957 is two pronged. He contends that the statute did not "abolish" the office of surveyor general (despite the title of the act to the effect that it was to abolish the

office and despite the wording of the act to the effect that the office was abolished), but simply transferred all of the powers and duties thereof to the newly created Department of Conservation and Natural Resources; that this is evident from the fact that the newly created department comprises, among other things, the division of state lands and the division of forestry, both of which covered the functions theretofore existing in the surveyor general ex officio, as well as his official functions—such new divisions of such new department obtaining and utilizing all of the "personnel, records, papers, files, registers, property, equipment and funds of the surveyor general"; that the office was simply recreated under another name and that the obvious intention and object of the act was illegally to remove respondent from his office; that the whole act was a sham and a mere colorable abolishment of the office for the purpose of getting rid of respondent as its incumbent.

In support of this contention respondent relies on Malone v. Williams, 118 Tenn. 390, 103 S.W. 798, 822. This case involved an act attempting to abolish all offices existing under the charter of the City of Memphis. The new act purported to abolish the offices of city assessor, city attorney, assistant city attorney, judge and clerk of the city court, and to set up new ones whose duties were substantially the same. The Supreme Court of Tennessee said: "The offices are substantially the same; the names being merely changed. Men cannot be legislated out of office in this way. Even if the statute in question * * * could be treated as a valid amendatory act on prior legislation, it could not have the effect to remove the officers above named, and create a vacancy to be filled by appointment, since the same act which purports to abolish the offices restores them under another name." However, the entire force of this case was later, if not repudiated, at least so modified, restricted and watered down as to be left without much force, in the later cases of Hunter v. Crump, "MS. Jackson 1910"; Van Dyke v. Thompson, 136 Tenn. 136, 189 S.W. 62, and State ex rel. Linkous v. Morris, 136 Tenn. 157, 189 S.W. 67,

all as reviewed in House v. Creveling, 147 Tenn. 589, 250 S.W. 357, 362. In this case the court said: "[I]t is now settled law in Tennessee that the Legislature may adopt a new system of government for such * * * agencies of the state as are not protected by the Constitution, and to this end the Legislature may abolish the whole plan and the offices created for the administration of the old plan in whole or in part. The rights of officers thus affected must give way to what the Legislature conceives to be the public interest. * * * The bona fides of a new order cannot be tested alone by the transfer of the duties of old offices to the new ones, as has been argued. * * * Old offices may be abolished, not only when their functions become useless but when, as constituted, they do not fit into the new scheme."

Respondent also relies on Crawford v. Hunt, 41 Ariz. 229, 17 P.2d 802. We have given careful consideration to this case and consider it not in point either as to the facts or the points of law involved, though some of the language used, taken out of context, would seem to support respondent's view. The same applies to People ex. rel. Bolton v. Albertson (1873), 55 N.Y. 50.

This court cannot properly consider the wisdom of the 1957 act creating the new State Department of Conservation and Natural Resources. Its clear purpose was to consolidate and combine several different statutory offices under one administrative head for better administration of the main natural resources of the state. We need refer only to the office of the state engineer which, since its creation at the turn of the century, has continued to adjudicate the relative rights of the water users on all of the principal stream systems of the state, to regulate under more recent amendments the use of underground waters and the use of stockwatering places on the public domain, thus to a large extent, subject to appropriate action by the state courts in the nature of review, affecting the entire agricultural and stock raising industry. The comprehensiveness of the 1957 statute is such as to

preclude respondent's contention that the whole thing was merely colorable action to deprive him of his office, and that this is so patent as to compel our investigation of the motives of the legislature in enacting the legislation. See City of Reno v. Stoddard, 40 Nev. 537, 167 P. 317, and Worthington v. District Court, 37 Nev. 212, 142 P. 230, L.R.A. 1916 A, also Caldwell v. Lyon, 168 Tenn. 607, 80 S.W.2d 80, 100 A.L.R. 1152, also annotation 4 A.L.R. 206.

4. In support of his attack upon the motives of the legislature, respondent makes reference to his affirmative defense that the act in question "was solely and purely motivated as the result of the Ormsby County grand jury report * * * wherein the present surveyor general received severe criticism from said grand jury * * * with a strong recommendation for his impeachment. The legislature failed, neglected and refused to impeach Mr. Ferrari, but instead passed the act in question for the sole purpose of avoiding the issue and for no other." The complete answer to this would appear to be that the grand jury report referred to was filed June 20, 1956, whereas the proceedings for the constitutional amendment eliminating the office of surveyor general as a constitutional office and paving the way for legislative action were initiated as early as 1951. Respondent has submitted in support of this contention nothing beyond his own statement, which we cannot substitute for the presumption that the statute was enacted and the office of surveyor general abolished "by considerations which affect the public interest". Denver v. Hobart, 10 Nev. 28.

As the office of surveyor general at the time of the enactment of the 1957 legislation was an office created by the legislature and subject to being abolished by the legislature without regard to the interests of respondent, and as its abolishment contravened no provisions of the constitution, and as this court may not inquire into the wisdom of the legislation, and as it is the clear, mandatory duty of the respondent under subsection 2 of section

16 of the act to comply therewith and to transfer to the State Department of Conservation and Natural Resources all records, papers, files, equipment etc. of the office, the writ of mandate as prayed for commanding such transfer must issue, and it is so ordered.

EATHER and MERRILL, JJ., concur.